(No. 12541.—Judgment affirmed.)

THE CITY OF CHICAGO, Defendant in Error, vs. FRED A. MAYER, Plaintiff in Error.

*Opinion filed October 27, 1919—Rehearing denied Dec. 4, 1919.*

1. ORDINANCES—*whether ordinance is unreasonable is question for court.* Whether a particular ordinance is unreasonable and void is a question for the court and not for the jury, and where a jury has been waived and all the questions are being tried before the court, evidence may be offered to prove the ordinance unreasonable.

2. SAME—*presumption is in favor of an ordinance—burden of proof.* The presumption is in favor of the validity of an ordinance, and it is incumbent upon anyone who seeks to have it set aside as unreasonable, to show affirmatively, by clear proof, wherein such unreasonableness exists.

3. SAME—*evidence calling for conclusion of witness as to reasonableness of ordinance is not admissible.* Where an ordinance fixing rates for hauling is attacked as unreasonable, evidence offered in the form of a conclusion of the witnesses as to whether or not the charges fixed are confiscatory is not admissible.

4. PUBLIC UTILITIES—*individual expressman is not a common carrier within meaning of Public Utilities act.* Although expressmen are common carriers as that term is generally understood, the definition of a "common carrier" in the Public Utilities act does not include every man who does hauling and transfers baggage, and there is no intention shown by the act to put the business of ordinary expressmen in cities and towns under the control of the Public Utilities Commission.

5. STATUTES—*courts will adopt such a construction as was reasonably intended by legislature.* In construing a statute courts will consider the language used in the act, the evil to be remedied and the object to be attained, and where a literal construction of the statute will result in great injustice and lead to consequences not contemplated by the legislature, the courts will, if possible, adopt a more reasonable construction.

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. HUGH J. KEARNS, Judge, presiding.

BRADY, RUTLEDGE & DEVANEY, (ANDREW RUTLEDGE, of counsel,) for plaintiff in error.

SAMUEL A. ETTELSON, Corporation Counsel, and HARRY B. MILLER, (DANIEL WEBSTER, of counsel,) for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is a writ of error sued out to review the judgment of the municipal court of Chicago in a proceeding wherein Fred A. Mayer, plaintiff in error, who was engaged in the moving and express business in Chicago, was fined $50 and costs for the violation of an ordinance of the city of Chicago which fixed the rates to be charged for the transportation of goods, wares and merchandise in said city.

Plaintiff in error has been engaged in the moving and express business for a long time in Chicago and contracts with persons, generally, who desire his services. In this work he uses four auto trucks and various horse-drawn wagons. The complaining witness, Mrs. Viola Neely, called up his place of business on the telephone and requested to have her household goods moved from her then residence to another in the city. She testified that she understood that he was to move her goods for $18. He charged her $30.50. There is some question in the case as to whether or not Mrs. Neely understood from the telephone conversation what was to be charged her for the moving, but there can be no question that the charge made was largely in excess of the rate allowed by said ordinance.

Counsel for plaintiff in error argue that the ordinance in question is unreasonable, unjust and confiscatory, and therefore unconstitutional and void, and that plaintiff in error should have been allowed to show that fact when he offered evidence tending, as he claims, to prove it. Whether a particular ordinance is unreasonable, and therefore void, is a question for the court and not for the jury. (*City of Lake View* v. *Tate*, 130 Ill. 247; *Hawes* v. *City of Chicago*, 158 id. 653; *Harris* v. *People*, 218 id. 439; 2 Dillon on Mun. Corp.—5th ed.—sec. 599.) Plaintiff in error in

this case waived a jury and all questions were tried before the court, therefore the evidence could be properly offered at the time the case was being heard on the merits. The presumption is in favor of the validity of an ordinance, and it is incumbent upon anyone who seeks to have it set aside as unreasonable, to point out or show affirmatively, by clear and definite proof, wherein such unreasonableness exists. (*Chicago and Alton Railway Co.* v. *Averill,* 224 Ill. 516; *City of Chicago* v. *Shaw Livery Co.* 258 id. 409.) For the purposes of this litigation it is immaterial whether the cost of the operation of the express business was eighty per cent higher than it was when the ordinance was passed. The only question to be decided by the court was whether or not plaintiff in error could, under the ordinance rates, receive a fair, just and reasonable return on the money invested by him in his business. The form in which the offer of this evidence was made was practically the offer of the conclusion of the witnesses as to whether or not the charges fixed by the municipal ordinance were confiscatory. Witnesses "must not usurp the province of the court and jury by drawing those conclusions of law and fact upon which the decision of the case depends." (Jones on Evidence,—2d ed.—sec. 372.) The evidence offered was not properly admissible because it called for the conclusion of the witnesses upon the ultimate facts. (*Martin* v. *Hertz,* 224 Ill. 84; *People* v. *Paisley,* 288 id. 310.) The trial court, therefore, was not in error in refusing to admit the testimony in the form in which it was offered.

Counsel for plaintiff in error further argue that the city of Chicago had no power to fix rates to be charged by expressmen, because said ordinance had been repealed, in effect, by the Public Utilities act, and that the Public Utilities Commission is the only body in the State to fix rates under which plaintiff in error, and others in a similar business, can operate. There can be no question, under the authorities, that expressmen are common carriers, as that term is

ordinarily understood. (*Hinchliffe* v. *Wenig Teaming Co.*
274 Ill. 417; *Parmelee* v. *Lowitz,* 74 id. 116; *Public Utili-
ties Com.* v. *Monarch Refrigerating Co.* 267 id. 528; 1 Bou-
vier's Law Dict.—Rawle's Rev. 3d ed.—553.) This being
so, the legislature could grant to the Public Utilities Com-
mission the power of regulating and controlling all express
business, whether done by companies or individuals. The
decisive question involved here is whether or not, under
the present Public Utilities act, it has so provided as to an
express business such as plaintiff in error conducts. Para-
graph (*b*) of section 10 of said act provides: "The term
'common carrier,' when used in this act, includes all rail-
roads, street railroads, express companies, private car lines,
sleeping car companies, fast freight lines, steamboat lines
and other common carriers by water, and every corpora-
tion, company, association, joint stock company or associa-
tion, firm, partnership or individual, their lessees, trustees,
or receivers appointed by any court whatsoever, owning,
operating or managing any such agency for public use in
the transportation of persons or property within this State."
(Hurd's Stat. 1917, p. 2284.) It would seem clear that
the business of plaintiff in error is not that of a street rail-
road, express company, private car line, sleeping car com-
pany, fast freight line, steamboat line or other common car-
rier by water, as those terms are used in this act.

In construing a statute the chief purpose is to ascertain
the intention of the legislature. The intention of the law-
makers is the law. Such intention is to be gathered from
the necessity or reason of the enactment and meaning of
the words, enlarged or restricted according to their real in-
tent. In determining the meaning of statutes the court will
have regard to the circumstances and objects sought to be
obtained by the statute. Courts will always consider the
language used by the legislature, the evil to be remedied and
the object to be attained. To find such intent, the whole
act, as well as the law existing prior to its passage, any

changes in the law made by the act and the apparent motive for making such changes, will be weighed and considered. When the intention can be collected from the statute, words may be modified or altered so as to obviate all inconsistency with such intention. It is a well established rule in construing statutes, that when great inconvenience or absurd consequences will result from a particular construction that construction should be avoided, unless the meaning of the legislature be so plain and manifest that avoidance is impossible. When the literal enforcement of a statute would result in great injustice and lead to consequences which the legislature could not have contemplated, the courts are bound to presume that such consequences were not intended and adopt a construction that it may be reasonable to presume was contemplated by the legislature. (*Hoyne* v. *Danisch,* 264 Ill. 467; *Warner* v. *King,* 267 id. 82; *People* v. *Highway Comrs.* 270 id. 141.) Having these rules of construction in mind, it is obvious that the legislature did not intend, when it defined "common carrier," that the term should be understood, under the act, to include every person who carried or transferred baggage or carried on any sort of express business, even though he only used one horse and an express wagon. It intended only to put within the jurisdiction of the Public Utilities Commission, railroads, street railroads, express companies and all other companies organized for the purpose of carrying on a large and extensive business as a common carrier. This conclusion is strengthened as to the intention of the legislature when we read in connection with the definition of "common carrier," the definitions of "transportation," "express company," "company," "corporation," and other words in said section. We find no intimation anywhere in the Public Utilities act that the legislature intended to put the business of ordinary expressmen in the cities and towns of the State under the control of the Public Utilities Commission. It would have been a comparatively simple matter for the legislature, if

it had so intended, to have so stated in plain terms. We find nothing in the act to indicate such intention. On the contrary, under a fair construction of the act we hcld that the legislature did not intend to place within the jurisdiction of the Public Utilities Commission the control of an express business such as plaintiff in error was conducting.

Nothing is here said that in any way conflicts with what was said in *Public Utilities Com.* v. *Monarch Refrigerating Co. supra.*

The judgment of the municipal court of Chicago will be affirmed.
                                        *Judgment affirmed.*