THE VILLAGE OF GLENCOE, Appellee, *vs.* SAMUEL R. HUR-
FORD, Appellant.

*Opinion filed April 24, 1925—Rehearing denied June 9, 1925.*

1. SPECIAL ASSESSMENTS—*when village does not, by ordinance,
surrender jurisdiction over road.* By passing an ordinance giving
consent to the commissioners of Lincoln Park to take, regulate
and improve Sheridan road the village of Glencoe does not sur-
render jurisdiction over the road within the corporate limits of
the village, where consent, in writing, of the owners of a major-
ity of the frontage of lots and lands along the road is not obtained,
as required by the statute for conferring jurisdiction on the com-
missioners.   (Laws of 1913, sec. 1, p. 443.)

2. SAME—*improvement may be local although it is advantage-
ous to municipality as a whole.* The fact that an improvement will
be of advantage to the city does not change its character as a local
improvement if primarily of material advantage to the adjacent
property, and where the improvement enhances the value of adja-
cent property, as distinguished from benefits diffused by it through-
out the municipality, it is a local improvement.

3. SAME—*hard road statutes do not take from cities and villages
jurisdiction to improve streets by special assessments.* Neither the
State Aid act of 1913, the $60,000,000 Bond Issue act of 1917 nor
the State Highway System act of 1921 has the effect of taking
from cities and villages jurisdiction to improve by special assess-
ment a street connected with the State highway system within the
corporate limits of a city or village, as there is no provision in
any of said acts which repeals any provision of the Local Improve-
ment act or the Cities and Villages act.

4. APPEALS AND ERRORS—*reviewing court will not search for er-
ror not shown in abstract.* While a court of review will sometimes
search the record in affirming a case it will not search the record
for error not disclosed by the abstract.

5. STATUTES—*what must be considered in construing an act.* In
construing a statute it is the duty of the court to attempt to de-
termine the intention of the legislature from the language of the
act by considering all the provisions of the act with reference to
the purpose for which the legislation was enacted.

6. SAME—*repeal of laws by implication is not favored.* Where
two statutes enacted with relation to the same subject are seem-
ingly repugnant, they should, if possible, be so construed that the
later may not operate as a repeal of the former by implication, and

it is only where there is a clear repugnance between the two laws, so that the provisions of both cannot be carried into effect, that the later law must prevail and repeal the former.

7. SAME—*words repeated in a later statute retain original construction.* Where a statute is changed by amendment or re-enactment and terms which have been given judicial interpretation remain in the law, such words will be understood and interpreted in the same sense theretofore attributed to them by the court, unless by qualifying or explanatory addition a contrary intention of the legislature is made clear, as the judicial construction is a part of the law and the legislature is presumed to have passed the later law with such construction in mind.

8. SAME—*absurd consequences should be avoided in construing statutes.* Where great inconvenience or absurd consequences will result from a particular construction of a statute that construction should be avoided unless the meaning of the legislature be so plain that avoidance is impossible, and when the literal enforcement of a statute will result in great injustice and lead to consequences which the legislature could not have contemplated, courts will presume such consequences were not intended and adopt a reasonable construction.

9. EMINENT DOMAIN—*distinction between exercise of power by cities and by State in improving streets or highways.* The power of eminent domain given to the Department of Public Works and Buildings in the acts providing for State roads is exercised because of the public benefits which are thereby diffused throughout the community, while such power as given to cities and villages in improving streets can be exercised only where the public improvement, by reason of its being confined to a locality, enhances the value of adjacent property, and property taken is paid for, in the latter case, by special assessment upon adjacent property benefited.

THOMPSON, J., DUNCAN, C. J. and FARMER, J., dissenting.

APPEAL from the Superior Court of Cook county; the Hon. E. M. MANGAN, Judge, presiding.

MORTON T. CULVER, for appellant.

GEORGE I. HICKS, for appellee.

Mr. JUSTICE HEARD delivered the opinion of the court:

This is an appeal from a final order and judgment of the superior court of Cook county under the Local Improvement act, overruling objections of appellant to the entry

of such order and judgment after proceedings had, in con-
formity with the act, upon a petition filed by appellee for
the widening and altering of a street in the village of Glen-
coe called Sheridan road, and for the condemnation of cer-
tain private property to be taken for use as a public street
in such widening and alteration.   The parties whose prop-
erty was sought to be taken by the condemnation proceeding
have not appealed.

It is contended by appellant that the village of Glencoe
had lost its jurisdiction of Sheridan road and that the Lin-
coln Park Commissioners had succeeded to such jurisdiction.
In 1913 the General Assembly passed an act which, among
other things, provided that the commissioners of Lincoln
Park, of the county of Cook, are authorized to take, reg-
ulate, etc., the public street, thoroughfare, etc., known as
Sheridan road, running through Glencoe, provided the con-
sent in writing of the owners of a majority of the front-
age of the lots and lands abutting on Sheridan road in
each municipality or park district, or in that portion of
each township not within any city or village, shall first be
obtained, and that the consent, expressed by resolution or
otherwise, of the authorities of each municipality, park dis-
trict and township shall first be obtained.   (Laws of 1913,
sec. 1, p. 443.)    Before the Lincoln Park Commissioners
could acquire any rights in Sheridan road in the village of
Glencoe it was necessary that both the consent in writing
of the owners of a majority of the frontage of the lots
and lands abutting thereon and the consent of the authori-
ties of the village of Glencoe should be first obtained.   The
village of Glencoe on July 7, 1914, passed an ordinance giv-
ing consent to the commissioners of Lincoln Park to take,
regulate, etc., Sheridan road in Glencoe according to the
provisions of the act of 1913, provided the commissioners
should accept the same within sixty days.   The commission-
ers accepted in writing the provisions of the ordinance in
accordance therewith.   The consent in writing of the own-

ers of a majority of the frontage of the lots and lands abutting on Sheridan road in the village not having been obtained, in August, 1922, the village board passed an ordinance in which it was recited that the requirements of the act necessary to be fulfilled to make the ordinance giving consent to the Lincoln Park Commissioners effective had not been fulfilled; that the necessary consents and permissions had not been acquired by the commissioners; that the commissioners had never in any manner assumed or exercised any authority, control or supervision over Sheridan road; that the village of Glencoe had at all times maintained control and supervision over it, and repealed the ordinance of July 7, 1914. The consent of the property owners abutting on Sheridan road in the village of Glencoe never having been obtained and the Lincoln Park Commissioners never having assumed control and management over the road, the village of Glencoe never lost jurisdiction over the road, and this objection of appellant was properly overruled.

It is contended by appellant that the improvement in question is a general and not a local improvement, and that for this reason the judgment should not have been entered. The petition herein is for the purpose of widening Sheridan road and taking off sharp angles at certain intersections. The evidence in the record shows that while the widening of the street would improve it for general travel, it would be a particular advantage to the immediate locality and increase the value of the property specially assessed. The fact that the improvement will be of advantage to the city does not change its character as a local improvement if primarily it is a material advantage to the adjacent property. Where the improvement enhances the value of adjacent property, as distinguished from benefits diffused by it throughout the municipality, it is a local improvement. (*City of Springfield* v. *Consolidated Railway Co.* 296 Ill. 17; *Northwestern University* v. *Village of Wilmette*, 230

id. 80.) Under the evidence in the present case the court properly held the improvement to be a local improvement.

It is contended by appellant that the description of parcel 21, said to be described in the petition and ordinance, is so indefinite that it cannot be located. We have carefully examined the abstract in this case and find in neither the abstract of the recommendation of the board of local improvements, the assessment roll, the objections filed, the order overruling the objections, the judgment appealed from, nor in the abstract of any of the proceedings set forth in the bill of exceptions, any description of any of the property sought to be taken or any description of parcel 21. The abstract consists of 591 pages, and the record, together with the exhibits, constitutes a volume of over 2000 pages. While a court of review will sometimes search the record for the purpose of affirming a case, it will not search the record to hunt for error not disclosed by the abstract. The description of parcel 21 as set forth in the petition is such that the property can be located by a competent surveyor.

The first point in appellant's brief is, "Subdivider has the right to make reservations and to limit the use of dedicated streets.—*Village of Bradley* v. *N. Y. C. Rr.*" We assume that by the reference appellant wishes to call attention to the case having that title reported in 296 Ill. 383, but our attention is not called in the argument to any facts to which either that case or this point in appellant's brief might have reference.

The village of Glencoe is a municipal corporation in Cook county having a population, according to the last Federal census, between 2500 and 3500 and is operating under a special charter granted by the General Assembly in 1869. By its charter it was granted the power to lay out, open, alter, widen, extend, establish, vacate, abolish, grade, pave or otherwise improve and keep in good repair all roads, streets, lanes, avenues, alleys, squares, commons, parks or other public grounds or places in the village and to have

exclusive control of the same. It was also given the power to pass all ordinances which the council may deem necessary and proper for the carrying into full effect of the provisions of the charter and for the regulation of the municipal government of the village.

The recommendation of the board of local improvements for this improvement was filed November 13, 1922, the ordinance for the improvement was adopted by the village board of trustees December 13, 1922, and commissioners were appointed, who took their oaths on May 17, 1923. These proceedings were not commenced under the $60,000,-000 Bond Issue act of 1917 and had no connection therewith. In 1913 the General Assembly passed an act for the construction of a system of State aid roads, by which one-half the cost of the construction of the road was to be paid by the county in which it was located and one-half by the State Treasurer out of any unexpended balance remaining in the State road and bridge fund. As originally passed this act contained a provision that no road or part thereof lying within the corporate limits of any city or village within this State shall be improved or opened with State aid. (Sec. 9.) It was also provided by section 32 of the act, (which is the section referred to in section 12 of the $60,000,000 Bond Issue act as section 32 of article 4 of the act of 1913,) that whenever any State aid roads should be constructed or improved, thereafter the cost of maintaining and keeping such roads in proper repair should be paid out of the State road and bridge fund upon the warrant of the Auditor, whenever such payment should be ordered by the State highway commission. It was also provided that no steam or electric railroad company, telephone or telegraph company, or company laying or using pipe lines, should have the right to locate or construct its road or place its poles or wires or lay its pipe lines upon any State aid road without the consent of the county board of the county wherein it was proposed to place or locate the same. This act also provided for the exercise

of the right of eminent domain in the name of the Department of Public Works and Buildings or in the name of the county in which the improvement was made.    Section 9 of this act, which is section 9 of article 4 of the State Road and Bridge act, was after its passage amended from time to time, so that at the time of the commencement of these proceedings it contained the following provisions:

"*And, provided,* that a road or part thereof lying within the corporate limits of any city or village having a population of twenty thousand (20,000) inhabitants or less, as shown by the last Federal census, situate within any county of the third class, may be improved or constructed with State aid, to connect or complete, by the most direct route, a State aid road already improved or constructed or being improved or constructed to the corporate limits of such city or village.

"*And, provided, further,* that a road or part thereof, lying within the corporate limits of any city, village or town having a population of twenty-five hundred (2500) inhabitants or less, as ascertained as aforesaid, in any county, shall be improved or constructed with State aid to connect or complete by the most direct route, a State aid road already improved or constructed, to the corporate limits of such city, village or town; and in any city, village or town having a population of more than twenty-five hundred (2500) and less than thirty-five hundred (3500) inhabitants, a road or part thereof lying within the corporate limits may, if the Department of Public Works and Buildings deems it necessary or advisable, be improved or constructed with State aid to connect or complete by the direct route, a State aid road already improved or constructed, to the corporate limits of such city, village or town.    The cost of such road for the same width as outside of the corporate limits and of the same materials may be provided for in the same manner as for that portion outside the corporate limits.    By agreement between the Department of Pub-

317—14

lic Works and Buildings and the common council or board of trustees, a road or street of greater width and of different materials may be constructed through such city, village or town by the Department of Public Works and Buildings, such city, village or town to pay the excess cost, if any, for such greater width, or different material. But such city, village or town shall thereafter maintain said road or street within the corporate limit."

By section 11 of the act as amended in 1923 it is provided: "Such highways shall not include any portion of a public highway within the corporate limits of any city or village, except as in section 9 of this act provided."

It is evident from reading the act in question that at the time of the passage of the act of 1913 the provisions with reference to eminent domain and repair and maintenance had no reference whatever to streets within cities or villages.

In the $60,000,000 Bond Issue act section 12 provides: "That the public highways upon which said roads are being constructed shall, during the construction period and continuously thereafter, be under the jurisdiction and control of said Department of Public Works and Buildings, but the duty of maintaining such highways shall rest on the local authorities until said construction work has been completed. No public utility company or person shall be granted any right, privilege or franchise in, on or along any such highway without the consent of said Department of Public Works and Buildings. After a road in said State-wide system has been completed and taken over by said Department of Public Works and Buildings said road shall thereafter be maintained by the State, under and in accordance with the provisions of section 32 of article 4 of the act of this State entitled, 'An act to revise the law in relation to roads and bridges,' approved June 27, 1913, and the amendments thereto."

It is to be noted that the provisions of section 12 are almost identical with the provisions of section 32 of the act of 1913 and that they are couched in almost identical language, and that the maintenance by the State after the State-wide system has been completed is to be in accordance with the provisions of section 32. It follows, therefore, that if section 32 has no application to streets within cities and villages, section 12 of the Bond Issue act can have no such application.

In 1921 the legislature passed an act for the establishment of a system of State highways, which system, among other things, included State aid roads and roads constructed under the $60,000,000 Bond Issue act. Section 11 of this act provided: "Any part or portion of the State highway system, not taken over by the Department of Public Works and Buildings, shall remain under the jurisdiction and control of the proper local authorities." Section 12 provided: "All highways which have heretofore been or may hereafter be designated under article 4 of 'An act to revise the law in relation to roads and bridges,' as highways which may be laid out, improved or constructed at the joint expense of the State and any county within the State, or by any county of the State, until such time as the said highways are taken over, excepting therefrom such portion of such highways in any county, for the repair, maintenance and marking of which the State is responsible, shall be under the direct control and supervision of the county board of the county in which said roads are located, and the county board shall improve, maintain and repair by patrol system or otherwise said roads from county funds as provided herein."

While section 12 of the Bond Issue act provides for the maintenance of a road after it has been taken over by the Department of Public Works and Buildings, it does not specify when or in what manner it shall be so taken over, but the inference is, from the connection in which the

words are used, that it is to be after its completion. Section 7 of the State Highway System act of 1921 does make such specification. It provides: "The highways designated in this act as State highways shall be taken over from the several towns, and road districts by the Department of Public Works and Buildings, in its discretion, as rapidly as the appropriations made for repair, improvement and maintenance thereof permit, provided the department, shall first take over the State bond issue roads. Before any highway, or part thereof, forming a portion of the State highway system is taken over, the Department of Public Works and Buildings shall notify in writing the commissioner of highways of the town or road district, of its intention so to do, and of the date when it will assume the maintenance and care thereof."

In construing an act of the legislature it is the duty of the court to attempt to determine the intention of the legislature from the language of the act when all of its provisions are taken together and considered with reference to the purpose for which the legislation was enacted. It is evident, when all provisions above quoted are read and considered together, that the only roads which were to be taken over by the Department of Public Works and remain under its sole control and jurisdiction were public highways outside of the corporate limits of municipalities. The notice to be given preparatory to the taking over is to be given in writing to the commissioner of highways of the town or road district and not to some officer of a city or village, and it is specified that the highways are to be taken over from the several towns and road districts, and no provision is made for taking them over from cities and villages. No attempt was ever made by the Department of Public Works to take over the portion of the street involved from the village of Glencoe or to prevent the making of this improvement by the village.

In 1923 the legislature passed an act entitled, "An act to amend section 9 of article 4 of 'An act to revise the law in relation to roads and bridges,' approved June 27, 1913, as amended, and to add section 9a thereto." By this act section 9 was amended by striking out the last proviso therein quoted and inserting in lieu thereof section 9a, which is as follows:

"Sec. 9a. A road or part thereof lying within the corporate limits of any city, village or town having a population of seven thousand five hundred inhabitants or less, as shown by the last preceding Federal census, or that portion of any street or road along which the residences average more than two hundred feet apart, shall be improved or constructed by the State to connect or complete by the most direct route any hard-surfaced road forming a part of the State highways system as defined in 'An act in relation to State highways,' approved June 24, 1921, already improved or constructed, or being improved or constructed to the corporate limits of such city, village or town. The cost of such road for the same width and of the same materials as outside of the corporate limits, shall be paid entirely by the State. By agreement between the Department of Public Works and Buildings and the common council or board of trustees, a road or street of greater width and different materials may be constructed through such city, village or town by the Department of Public Works and Buildings, such city, village or town to pay the excess cost, if any, for the greater width or different material, but the State shall thereafter maintain such road within the corporate limits: *Provided,* that in case any such city, village or town has constructed or has started to construct such a road since January 1, 1922, the State shall upon the completion thereof thereafter maintain such road and shall refund to such city, village or town the cost of constructing same for the same width as the road outside the corporate limits. The money so refunded shall be paid into the general corporate fund in

case the cost of constructing the road was paid out of such fund or if the cost of constructing the road was paid by special taxation or special assessment the money shall be distributed to each person who owns such assessed or taxed property at the time such distribution is made in proportion to the amounts assessed or taxed against such property."

This amendment was not an amendment of the $60,-000,000 Bond Issue act but was an amendment of the law providing for the building of State aid roads. Section 12 could have no application to a road built under the provisions of section 9a. The provisions of section 12 with reference to the control of the Department of Public Works and Buildings over the roads are entirely different from the provisions of section 9 and section 9a. By section 12 the Department of Public Works and Buildings is given jurisdiction and control over the $60,000,000 bond issue roads, and no public utility company or person can be granted any right, privilege or franchise in, on or along any such highway without the consent of the Department of Public Works and Buildings. No such provision is found in section 9 or section 9a. There is no provision in section 9a that a road built under its provisions shall, after being built, be under the jurisdiction and control of the Department of Public Works and Buildings, or that no public utility company shall be granted any right, privilege or franchise in, on or along any such highway without the consent of the Department of Public Works and Buildings. Section 9 as it was at the time of the commencement of these proceedings read: "But such city, village or town shall thereafter maintain said road or street within the corporate limit." The only reference in section 9a to the future is, "but the State shall thereafter maintain such road within the corporate limits." The fact that this provision was placed in section 9a is evidence that neither section 12 of the $60,000,000 Bond Issue act nor section 11 of the law of 1921 had reference to streets in municipalities.

While by the State Aid act of 1913, the $60,000,000 Bond Issue act of 1917 and the State Highway System act of 1921 the right of eminent domain is given to the Department of Public Works and Buildings for the purpose of altering and re-locating roads, yet the purpose for which such right is given is an entirely different purpose from that for which the right is given to cities and villages under the Local Improvement act to alter and widen streets. The Department of Public Works and Buildings can only exercise this right for purposes which are public in their nature and where the benefits derived by its exercise are diffused by it throughout the community. A city or village cannot exercise this right under those conditions, but only where the public improvement, by reason of its being confined to a locality, enhances the value of adjacent property as distinguished from benefits diffused by it throughout the municipality. (*City of Chicago* v. *Blair,* 149 Ill. 310; *Carlyle* v. *Bartels,* 315 id. 271.) In the former case the payment for the property acquired under the Eminent Domain act is to be made by the State, while in the latter case the property acquired is to be paid for by special assessment upon the adjacent property benefited.

Neither the State Aid Road act of 1913, the $60,000,000 Bond Issue act of 1917 nor the State Highway System act of 1921 refers in any way to the Local Improvement act for making improvements in municipalities in this State, and while these acts repeal directly many road and bridge acts, in so doing they refer neither to the Local Improvement act nor to the Cities and Villages act.

Repeal of laws by implication is not favored, and it is only where there is a clear repugnance between two laws and the provisions of both cannot be carried into effect that the later law must prevail and the former be considered repealed by implication. (*Dingman* v. *People,* 51 Ill. 277; *People* v. *Faherty,* 306 id. 119; *People* v. *Burke,* 313 id. 576.) Where two statutes are enacted which have relation

to the same subject, the earliest continues in force unless the two are clearly inconsistent with and repugnant to each other, or unless in the latest statute some express notice is taken of the former plainly indicating an intention to repeal it, and where two acts are seemingly repugnant, they should, if possible, be so construed that the later may not operate as a repeal of the former by implication. *Town of Ottawa* v. *County of LaSalle,* 12 Ill. 339; *People* v. *Burke, supra.*

The power given to the village of Glencoe by its charter to alter and widen streets is specific and exclusive, and it has long been the doctrine in this State that statutes conferring, in general terms, authority upon commissioners of highways to lay out, open, maintain or vacate roads do not give authority that can be exercised within the territorial limits of cities and villages although such roads are located within the towns for which such commissioners of highways are elected. *Commissioners of Highways* v. *Baumgarten,* 41 Ill. 254; *People* v. *Board of Supervisors,* 111 id. 527; *Shields* v. *Ross,* 158 id. 214.

Prior to the enactment of the law establishing a State highway system, in 1921, this court in *Village of Brookfield* v. *Ricker,* 295 Ill. 316, held that in no place in the act of 1913 was there anything that repealed, directly or by implication, the authority of a municipality, under the Local Improvement act, to make a pavement to be paid for, according to the provisions of that act, by special assessment on the property benefited. Likewise, prior to the enactment of the act of 1921 and after the passage of the act of 1917, this court recognized the right of the village of Glencoe to widen and alter a portion of the same street here in question and to levy a special assessment upon the property benefited thereby. *Village of Glencoe* v. *Stone,* 296 Ill. 177.

In 1877 the legislature passed an act to enable cities and villages to acquire, by purchase, lease or gift, and to establish, maintain and regulate, ferries, bridges, and the ap-

proaches thereto, within their corporate limits and within five miles thereof.   In 1879 this law was amended, giving to the purchasing city control of the bridge, ferry or approach located outside of the city when purchased.   Under the provisions of this act the city of Peoria purchased a bridge across the Illinois river, together with the approach thereto for a distance of more than seven-sixteenths of a mile.   This approach was within the corporate limits of the village of East Peoria and was known as West Washington street.   The village passed an ordinance for the paving of this street, and it was contended that the street was owned by the city of Peoria and not by the village of East Peoria and that the city of Peoria was liable to improve the street.   In passing upon this contention this court in *Mushbaugh* v. *Village of East Peoria,* 260 Ill. 27, said: "In the United States, township, county or other local authorities usually have control or supervision over ordinary public highways in the country, while the corporate authorities of cities, villages and incorporated towns usually have such control within their respective limits.   Whether such jurisdiction and power in the one are exclusive depends upon the intention of the legislature.   As a general rule, however, a grant to a city, incorporated village or incorporated town of power to control and regulate the streets confers exclusive authority over the streets, and vests in such authorities the power and jurisdiction to regulate and control highways which have heretofore been under the control of township or county organizations and transfers to such city or village the duty of maintaining and repairing them, unless the statute otherwise provides.   (3 Dillon on Mun. Corp.—5th ed.—sec. 1138, and cases cited.)   It is conceded that the village of East Peoria was incorporated under the general City and Village act, which grants exclusive jurisdiction over the streets of the municipalities incorporated thereunder, unless otherwise specially provided by statute.   The statute under which the city of Peoria pur-

chased the bridge and road in question provides for the control of bridges and roads but does not in any way refer to streets. 'The word 'road' is now commonly used as denoting a public way in the country rather than the street of a town or city.' (Elliott on Roads and Streets,—2d ed.— sec. 7.) While no satisfactory and generally accepted definition of the term 'street' has been reached by the authorities, the most generally accepted definitions are those which confine a street to 'a public highway within an incorporated municipality.' (3 Dillon on Mun. Corp.—5th ed.— sec. 1121.) The most natural construction of the statute in question would be to confine it to the control of bridges and roads by cities and villages where such roads are outside of the limits of other cities, villages or incorporated towns. (See *Peoria and Pekin Union Railway Co.* v. *People,* 144 Ill. 458; *Snell* v. *City of Chicago,* 133 id. 413; *City of Joliet* v. *Drainage District,* 222 id. 441.) The general rule is, that one municipality cannot levy a tax for an improvement to be made within the limits of another municipal corporation. (*Town of Ottawa* v. *Walker,* 21 Ill. 605; *People* v. *LaSalle County,* 111 id. 527; *Loeffler* v. *City of Chicago,* 246 id. 43.) The statute conferring authority, in general terms, upon commissioners of highways in country districts to maintain and control roads and bridges within their respective towns will not be construed to authorize its exercise within the territorial limits of incorporated cities and villages in such towns. (*People* v. *Chicago and Northwestern Railway Co.* 118 Ill. 520; *Shields* v. *Ross,* 158 id. 214; *People* v. *Chicago and Alton Railroad Co.* 172 id. 71.) This same rule would necessarily be applied in the construction of a statute which gave, in general terms, the power to one municipality to construct and maintain roads in another municipality."

Those general terms used in the acts now under consideration are not as explicit as those by which powers are granted to the commissioners of highways in towns. By

section 50 of the Road and Bridge act (Smith's Stat. 1923, p. 1794,) it is provided: "The commissioner of highways of each town or road district shall have power and it shall be his duty: (1) To lay out, alter, widen or vacate roads as hereinafter provided. * * * (5) To direct the construction, maintenance and repair of roads and bridges within the town or district, to let contracts, employ labor and purchase material and machinery therefor. * * * (6) To have general charge of the roads and bridges of his town or district, to keep the same in repair and to improve them so far as practicable." As has been seen, it has been uniformly held that this statute confers no authority upon commissioners of highways to exercise these powers within the territorial limits of incorporated cities and villages in such towns.

It is a familiar rule in the interpretation of statutes that where the terms used in a statute have acquired a settled meaning through judicial interpretation and the statutory law is changed by amendment or re-enactment, and the terms to which judicial interpretation have been given remain in the law thereafter, they are to be understood and interpreted in the same sense theretofore attributed to them by the court unless by qualifying or explanatory addition a contrary intention of the legislature is made clear. The judicial construction becomes a part of the law, as it is presumed that the legislature in passing the later law knew the judicial construction which had been given to the words of the prior enactment. (*People* v. *Illinois Central Railroad Co.* 314 Ill. 373; 26 R. C. L. 992.) It must therefore be presumed that the legislature did not intend by the act of 1913 or 1917 or the enactment of section 9a in 1923, by the use of general terms with reference to roads and public highways, to take from cities and villages the special and exclusive powers of altering and widening streets by special assessment upon the property specially benefited under the Local Improvement act.

From a consideration of the provisions of the various road and bridge acts, the Local Improvement act and the powers granted to the village of Glencoe, and in the light of the authorities, we find that there is no such inconsistency or repugnancy between them as would cause, by the general terms of any of the road and bridge acts, the repeal, by implication, of the specific and exclusive powers granted to the village of Glencoe to alter and widen its streets by special assessment upon the property specially benefited. To hold otherwise would cause great inconvenience, absurd consequences and endless confusion in almost every city or village in Cook county having less than 20,000 inhabitants, and in cities and villages having a population of less than 7500 in other counties, with reference to the grant of power by the village to public utilities, would greatly hamper the village in its sanitary measures, and would prevent, no matter how great the necessity, such city or village from ever altering, widening, paving or improving a street upon which a hard-surfaced road had been laid by the State, by special assessment. It is a well established rule in construing statutes, that when great inconvenience or absurd consequences will result from a particular construction, that construction should be avoided unless the meaning of the legislature be so plain and manifest that avoidance is impossible. When the literal enforcement of a statute would result in great injustice and lead to consequences which the legislature could not have contemplated, the courts are bound to presume that such consequences were not intended and will adopt a construction which it may be reasonable to presume was contemplated by the legislature. *City of Chicago* v. *Mayer,* 290 Ill. 142.

The superior court of Cook county properly overruled appellant's objections, and the final order and judgment of the court will be affirmed.         *Judgment affirmed.*

THOMPSON, J., DUNCAN, C. J., and FARMER, J., dissenting:

Sheridan road is a public highway extending north from the city of Chicago to the State line, following generally the contour of the west shore of Lake Michigan. That part of Sheridan road north of the city of Chicago is by the Hard Road act of 1917 designated as Route No. 42. The road enters the corporate limits of the village of Glencoe from the east at a point about forty rods north of the south limit of the village and extends through the village in a northwesterly direction. That part of the road within the village is improved by a pavement laid in 1893, varying in width from eighteen feet to twenty-two feet. The road runs through the residence portion of the village and is used largely by motor vehicles traveling from and to Chicago. The State, through its Department of Public Works and Buildings, has taken over the road and has constructed three bridges within the limits of the village. The floor of one of these is about two feet higher than the floor level of the bridge which it replaced, and the floors of the other two are approximately ten feet higher than the floors of those which they replaced. The plan of the Department of Public Works and Buildings is to widen the street at narrow points so that it will have a uniform width of sixty-six feet and to re-locate the road at certain points in order to avoid sharp turns and steep grades. The width of the roadway on the bridges being constructed by the State is thirty feet and the plan provides for a pavement through the village thirty feet in width. Glencoe is a village having a population of less than 7500, and under the statute the State is required to bear the cost of improving and constructing the section of Route No. 42 within the village limits the same width and of the same materials as other sections of the route outside the corporate limits.

The first legal question arising is whether the village of Glencoe has the authority to initiate and prosecute proceed-

ings to condemn private property for the purpose of re-locating, straightening and widening a street which is a section of the system of State highways. The determination of this question requires the consideration of all the pertinent provisions of the laws of this State regarding public roads and streets.

The system of State highways established by the act of 1921 includes all durable, hard-surfaced roads in the State improved by the State or by any county, or jointly by the State and any county, or jointly by the State and the Federal government. By an act passed at the same session of the General Assembly the Department of Public Works and Buildings is given full power and authority to construct the durable, hard-surfaced roads of the State under plans and specifications approved by it and to take by eminent domain proceedings such private property as it finds necessary for providing roadways or materials for use in the construction of the State highways. (Smith's Stat. 1923, p. 1849.) This act authorizes the department to delegate its power to construct, under its supervision, hard-surfaced roads to the counties of the State, but nowhere in this act or in any other is the department given power to delegate any of its authority to cities or villages. In 1913 there was a general revision of the law of this State in relation to roads and bridges, and by section 3 of the general act the Department of Public Works and Buildings is given general supervision of all highways and bridges which are constructed, improved and maintained, in whole or in part, by the aid of State money, and the power to approve and determine the final plans and specifications for all State aid roads and to let all contracts for the construction of the same. (Smith's Stat. 1923, p. 1783.) Section 6 of the act in relation to State highways gives to the Department of Public Works and Buildings, in addition to and not in limitation of its general powers, power to determine and adopt rules, regulations and specifications and to enter into

contracts covering all matters and things incident to the location, re-location, construction, repair, reconstruction, improvement and maintenance of State highways. Section 8 of the act provides that when a part or portion of a highway is taken over by the State as a part of the system of State highways it shall thereafter be constructed, reconstructed, repaired, improved and maintained by the State. Section 9 gives the Department of Public Works and Buildings the right to acquire any land necessary for the construction, re-location, widening or straightening of a State highway. Section 15 of the act gives the department power to restrict and regulate the use by public utilities of highways forming a part of the State system. (Smith's Stat. 1923, pp. 1850, 1851.) Sections 2, 7, 11 and 12 of the Hard Road act of 1917, which provides for the issuance of $60,000,000 worth of bonds for the purpose of constructing a State-wide system of durable, hard-surfaced roads, which system includes the street in question, give to the Department of Public Works and Buildings full authority to construct, maintain, supervise and regulate the use of roads built pursuant to the provisions of the act. Section 9 gives the department power to make minor changes in the location of the routes designated by the act, and limits the right of the department to the construction of highways within the corporate limits of cities and villages to such as are permitted by the general Road act of 1913. (Smith's Stat. 1923, p. 1834.) Section 9a of the general act provides that a road, or part thereof, lying within the corporate limits of any city or village having a population of 7500 or less, as shown by the last Federal census, shall be improved or constructed by the State to connect or complete by the most direct route any hard-surfaced road forming a part of the system of State highways constructed or being constructed to the corporate limits of such city or village, the cost of such road for the same width and of the same materials as outside the corporate limits to be paid entirely by

the State. (Smith's Stat. 1923, p. 1785.) This act merely fixes the minimum amount which must be paid by the State, but does not prevent the State from paying more if, as provided by section 7 of the Hard Road act of 1917, an extreme case is presented which in the opinion of the department requires the construction of the road of a greater width than eighteen feet.

By reading together the provisions of the road laws of this State hereinbefore mentioned, it is clear that the system of State highways which is placed under the exclusive control and jurisdiction of the Department of Public Works and Buildings includes all of the routes designated that are not within the corporate limits of cities and villages having a population of more than 7500.

The section of Route No. 42 within the corporate limits of the village of Glencoe is by the laws of this State placed under the general supervision and control of the Department of Public Works and Buildings, and it follows that the village authorities have no power to make any improvements on this highway without the consent of the department. The authority to improve the highway must be vested either in the State or in the municipality, otherwise there will be a conflict of jurisdiction and the interests of the public will suffer. If the authority to open, alter, widen and vacate streets given to cities and villages by section 65 of the Cities and Villages act is not modified by the Road and Bridge act, then a city or village could vacate and close a street designated by the State authorities, or by the county authorities with the approval of the Department of Public Works and Buildings, as part of the State highway system and thereby destroy the continuity and serviceability of the system. If the control of a street designated as a part of the State highway system remained with the city or village, then the State might establish one grade and the local authorities another, or the local authorities might destroy the section as a serviceable unit of the State highway sys-

tem by granting a franchise to a public utility for a use incompatible with the use of the highway as a part of the State-wide system. In the case at bar the Department of Public Works and Buildings is re-locating, straightening and widening Sheridan road within the corporate limits of the village of Glencoe, and in its construction of bridges it has raised the grade substantially above that theretofore established by the village. It is impossible to carry out the provisions of the Road and Bridge act establishing a State-wide system of improved highways without holding that the Department of Public Works and Buildings has exclusive control and supervision of all units of the State highway system outside of cities and villages having a population of more than 7500. If in the discretion of the department it is necessary to complete the system, it has authority to extend its jurisdiction over connecting units within the corporate limits of cities and villages in Cook county of a population of 20,000 or lesss.

The conclusion we have reached does not mean that the city or village may not by general taxation, or by special assessment or special taxation, improve the street which forms a part of the State highway system by paving a portion of it not paved by the State, by laying sidewalks along the street, by installing a system of drainage, or otherwise, provided it secures the consent and approval of the Department of Public Works and Buildings. Section 9a of the act of 1913 provides that the State highway may be improved for a greater width and of different materials through a city or village provided the Department of Public Works and Buildings agrees with the local authorities to make the change, but whatever the width of the improvement or the materials used, the improvement is made by and under the supervision of the department, the excess cost, if any, of the improvement made under such an agreement to be paid by the city or village. If the improvement is local in character the cost of it may be paid wholly or in part by spe-

cial taxation or special assessment, in accordance with the law governing methods of making local improvements. The provisions of the Road and Bridge act to which reference has been made do not repeal any of the provisions of the Local Improvement act, but the two acts must be construed together with respect to those portions of the State highway system which lie within the corporate limits of cities and villages where the State shall or may improve the highway, and where the authority granted by the two acts conflicts, the Local Improvement act is modified to the extent necessary to carry out the provisions of the acts providing for the establishment, improvement and maintenance of a State-wide system of durable, hard-surfaced roads.

In *Village of Brookfield* v. *Ricker,* 295 Ill. 316, we held that the local authorities had the right to improve by special assessment a road which had been designated by the county of Cook as a State aid road but which had not been taken over by the State. The street under consideration there had not been designated by the State as a part of a State-wide system of durable, hard-surfaced roads, and the decision was rendered prior to the adoption of the act of 1921, which establishes a system of State highways and places the same under the general supervision and control of the Department of Public Works and Buildings. What is said in the opinion in that case was said with reference to the question then before the court. The questions presented there were decided correctly. The section of highway now before us has been designated by a public act of this State as a part of the State highway system and it has been taken over by the State and is now being improved under State supervision. It follows that what was said in the *Brookfield case* has no application to the question presented in the case at bar.

The right to acquire land for re-locating, straightening and widening the section of the system of State highways here under consideration being by law vested exclusively in

the Department of Public Works and Buildings, the village of Glencoe had no authority to institute these proceedings and the legal objection challenging its right should have been sustained.