Andrew Kosowski, as Administrator of the Estate of
Connie Kosowski, Deceased, and of the Estate of
Charlotte Kosowski, Deceased, Plaintiff-Appel-
lant, v. McDonald Elevator Company, a Corpora-
tion, and Owen Harper, Jr., Defendants-Appellees.

Gen. No. 10,366.

Third District.

January 23, 1962.

Robert L. Droste, Droste & Droste, of Mt. Olive, for appellant.

Hebron & O'Connell, of Carlinville, for appellees.

REYNOLDS, J.

This cause arose out of a collision between an automobile driven by Nedra Kosowski and a truck owned by McDonald Elevator Company, and driven by Owen Harper, Jr. its employee. The collision occurred at the intersection of U. S. Highway No. 66 (hereinafter called U. S. 66) with Illinois State Route No. 138 (hereinafter called Illinois 138). Mrs. Kosowski was driving north on U. S. 66 and turned into the intersection to go west and was in the west half of the southbound lanes of U. S. 66 when struck by the truck. The truck was proceeding south on U. S. 66 at a speed estimated at 45 to 50 miles per hour. Riding with

Mrs. Kosowski were her three daughters Sharon Kosowski Scheller, Connie Kosowski and Charlotte Kosowski. Connie and Charlotte were killed. The suit is brought by the father, Andrew Kosowski, as administrator. The automobile was a red Nash and the truck was a grain truck loaded with grain and weighing some 59,000 lbs. The pavement was dry, the weather clear and the time was about 2:00 o'clock p. m. U. S. 66 is a four laned highway, two lanes for southbound traffic and two for northbound traffic, with a dividing grassy strip, and at this point runs generally north and south. Illinois 138 runs east and west. There were six electric traffic control lights at the intersection, two on each side of the intersection and two in the middle. There are left turn lanes on U. S. 66 left of the traffic lanes on each side. The highways are level for a considerable distance on each side of the intersection.

Harper estimated his speed at 40 miles per hour when 300 yards from the intersection. Father August Sperl, an eyewitness, estimated the truck speed at 45 to 50 miles per hour. Walter J. Sellers, an eyewitness, estimated the speed of the truck at 45 to 50 miles per hour.

L. R. Bailey, a field engineer in the maintenance department of the Illinois Highway Department was driving behind the Kosowski car, and saw it turn into the left turn lane about 200 to 250 feet south of the intersection. He did not know whether Mrs. Kosowski made a stop or not but doubted it. He was about 50 feet beyond the intersection when he heard the screech of tires on the pavement. The traffic lights were green when he approached the intersection and were green as he proceeded through it. He did not recall seeing the truck before the accident.

Sharon Kosowski Scheller, a daughter, was riding in the back of the Kosowski car. She, her mother

and two sisters had gone to Staunton to get school clothes. Mrs. Kosowski was driving. She testified that as Mrs. Kosowski approached the intersection she pulled off into the left turn lane and put her hand out for a left turn signal. The next thing this witness remembered was waking up in the hospital.

Mrs. Nedra Kosowski testified: She pulled into the left turn lane 100 feet south of the intersection, and gave a left turn signal with her hand; when she first observed the truck he was way down the lane; she came to a complete stop as she came to the intersection and she observed the truck then and it was 300 feet or more down the road; the traffic lights were green as she approached the intersection; as she started to make the turn she glanced up and to her the light appeared yellow; as she made the turn, in low gear, the car was barely crawling; there was nothing to obstruct her view of the truck; the next thing she remembers was her head going round and round; that she had time to get across the intersection.

Father August Sperl, Rector of Sacred Heart Church in Springfield testified he was travelling south on U. S. 66, at a speed of between 45 and 50 miles per hour; the truck passed him some 300 yards north of the intersection; truck was not going a lot faster than his car but was going faster when he passed; a red Mercury automobile also passed him; the speed of the truck at the time of the impact was definitely not over the speed limit and the lights were green when he approached and green at the time of impact; he saw Kosowski automobile a split second before the accident; suddenly saw something shoot across the highway and saw it momentarily.

Walter J. Sellers, of Ironton, Missouri, was driving the red Mercury automobile. He testified he saw truck pass Father Sperl's car half to three-quarter of a mile north of the intersection; he pulled around Father

Sperl's car and was approximately even with the back of the truck, but in the east half of the southbound lanes as he approached the intersection; the traffic light was green and remained green after the impact, at no time turning yellow; saw Kosowski car and saw it make a diagonal turn to the left when he first noticed it; Kosowski car never stopped or paused in the intersection and was traveling at 25 miles per hour or possibly more; saw no arm signal; automobile proceeded west in front of the truck.

Roy Schmidt, a State Highway Policeman, testified he arrived at the scene of the accident some 15 minutes after it happened; there were no skid marks on the pavement; the point of impact was in the intersection; there are six electric signals at the intersection; the Kosowski automobile was some 35 feet from the point of impact and the truck was some 465 feet.

The cause was tried before a jury and the jury returned a verdict of "Not Guilty" as to both defendants. Judgment was entered on the verdict and the plaintiff appeals.

No questions on the pleadings are raised in the appeal. The appeal raises two points. First, that the trial court erred in permitting certain testimony of the witnesses Father August Sperl and Roy Schmidt and second, that the trial court erred in the giving of Defendant's Instructions Nos. 10, 11 and 12.

The testimony of Father Sperl objected to was this question: "Was there anything unusual that you noted about the operation of the truck by Owen Harper, Jr., at and immediately prior to the accident?" and the answer "Nothing unusual." And the question: "Referring to when he passed you and had gone on ahead of you was he driving carelessly?" and the answer "I could not say he was, no."

The testimony of Trooper Schmidt objected to was this: "Referring to your report, your report of con-

tributing circumstances, is that on the back of page two of Exhibit Seven?" and the answer: "It is." and the question: "What does your report show in that category?" and the answer: "Unit One failed to yield right of way." Unit One was the Kosowski car.

The objection to this testimony of Father Sperl and Trooper Schmidt is that it is a conclusion of the witness as to an ultimate fact in issue to be determined by a jury. Both Father Sperl and Schmidt were called as witnesses for the plaintiff, and the questions and answers objected to were in the cross-examination.

In support of the contention that the evidence objected to was a conclusion of the witness as to an ultimate fact in issue to be determined by the jury, the plaintiff cites a number of cases. The case of Armstrong Paint Works v. Continental Can Co., 308 Ill 242, 139 NE 395, held such evidence to be incompetent, but the judgment of the lower court was affirmed, holding the finding was upon a consideration of the legitimate evidence in the record and not the result of an erroneous exclusion or disregard of competent evidence. Another case cited by plaintiff, City of Chicago v. Mayer, 290 Ill 142, 124 NE 842, was a case involving an ordinance of the City. In that case an offer was made to show by witnesses that the charges fixed by the ordinance were confiscatory, and the court held that the evidence was not admissible because it called for a conclusion of the witnesses upon the ultimate facts. The case of Keefe v. Armour & Co., 258 Ill 28, 101 NE 252, involved the admission of expert testimony, and the court held that where the ultimate fact in issue in a personal injury case is whether the method which the defendant's foreman directed the plaintiff to use in testing a tank car for leaks was reasonably safe, it is proper to permit the plaintiff to prove, by properly qualified experts, what conditions might arise from the use of such methods with

reference to gases, heat, etc. but it is error to allow an expert witness to state that in his opinion the method employed was unsafe. The case of Kimbrough v. Chicago City R. Co., 272 Ill 71, 111 NE 499, stated that where there is a conflict in the evidence as to whether plaintiff's alleged injury and physical condition at the time of the trial are the result of the accident, it is error to permit a physician to give his opinion that such injury and condition resulted from the accident. The case of Bell v. Toluca Coal Co., 272 Ill 576, 112 NE 311, was a coal mine case, and the court held that when all the facts showing the conditions at the place when the injury occurred, have been testified to by a witness and made intelligible to the jury, it was proper to refuse to permit expert testimony of a mine examiner that he found no unsafe condition. The case of Clark v. Public Service Co., 278 Ill App 426, also held that an expert witness may not give his opinion on the fact which the jury is to determine.

■ Applying the reasoning of these cases to the testimony of Father Sperl, an examination of the questions and answers objected to would seem to fall short of an opinion on his part as to an ultimate fact in issue. He was asked if there was anything unusual about the operation of the truck by the defendant Harper. He answered "Nothing unusual." If there had been any conflict as to the method of driving by Harper, this possibly could have been an ultimate fact in issue, but there is no conflict in the evidence as to the operation of the truck by Harper, unless it relates to speed. This court in considering the question and answer see no expression on the part of the witness as to the ultimate facts in issue. Likewise, the question "Referring to when he passed you and had gone on ahead was he driving carelessly?" and the answer "I could not say he was, no." referred to the conduct of Harper after passing the car of Father

Sperl and his equivocal answer can hardly be called an expression of opinion as to an ultimate fact. Perhaps this testimony should not have been admitted, but this court does not view the answers as expressing an opinion on the part of the witness that invaded the province of the jury.

■ As to the testimony of Trooper Schmidt, the admission of his notes on his report "Unit One failed to yield the right of way" was clearly inadmissible and did invade the province of the jury and was an opinion on an ultimate fact. One of the questions of ultimate fact was the right-of-way. Whether this one inadmissible answer constituted reversible error will be discussed later in this opinion.

■ The plaintiff complains of the giving of Defendant's Instructions Nos. 10, 11 and 12, stating they were ambiguous and uncertain; did not state the law with accuracy; did not set forth all essentials of the acts of legislation they related to; were not based on the evidence; permitted the jury to consider the negligence if any, of Nedra Kosowski in arriving at their general verdict, rather than their verdict concerning damages only, making no differentiation between liability and assessment of damages; and misled the jury as to the issues in the case. We cannot agree with the plaintiff that the three instructions were ambiguous and uncertain. On the contrary, they were definite and concrete statements of the statutory law involved in this cause. It is true they did not recite the complete section of the motor vehicle law from which they were taken, but an examination of the complete section fails to disclose any injury to the plaintiff by the omission. Defendant's Instruction No. 10 is the first part of Section 166 of the Uniform Act Regulating Traffic on Highways. In the instruction only the part of the section pertinent to the facts here was given, yet, if the plaintiff felt that the com-

plete section should have been given he should have submitted an instruction to that effect. This he failed to do. Likewise, Defendant's Instruction No. 11 is subsection (a) of Section 162 of the Act, and is not the whole section, but a reading of the rest of the section fails to disclose any requirement or duty that relates to the facts in this cause. Defendant's Instruction No. 12 is not a direct quote of the statute, but is a substantial recital of the provisions of subsection (a)1 of Section 129 of the Act. The rest of the section is not applicable to the cause here. We agree that the instructions complained of did not set forth the complete language and provisions of the sections from which they were taken, but we fail to perceive any injury to the plaintiff by such omission.

■■ The contention that these instructions were not based upon the evidence is only argumentative. There were three unbiased and disinterested witnesses who testified the traffic lights were green before and at the time of the impact. The only witness who disputed this was Mrs. Nedra Kosowski who thought the light was yellow. Mrs. Kosowski testified that the truck was some 300 feet away when she was at a complete stop. While the truck was not within the intersection as stated in Defendant's Instruction No. 10, it was so close as to constitute an immediate hazard. And the law as quoted in Defendant's Instruction No. 11 that no vehicle shall turn from a direct course upon a highway unless and until such movement can be made with reasonable safety, is a statement of law, directly applicable to the facts in question here. As to Defendant's Instruction No. 12, it is true the truck was not within the intersection at the time the green signal was exhibited. But, according to the three disinterested witnesses the light was green as the truck approached the intersection, it remained green up to and possibly some time after the impact, and it would

require a very strict interpretation to hold that the intersection only included the crossing itself, which would defeat the purpose of the law, namely to designate the right-of-way. A person driving an automobile or truck, approaching an intersection with signal lights and those lights giving him the right-of-way, would certainly have the right-of-way over a person intending or attempting to cross in front of him. Such a construction would be to render nugatory the very meaning of the term "right-of-way", which is the right to the immediate use of the highway.

█ The contention that the giving of these instructions for the defendant permitted the jury to consider the negligence, if any, of Nedra Kosowski has very little force when Plaintiff's Instructions Nos. 16 and 17 are considered. These instructions for the plaintiff fully set out the law involved.

There were 28 instructions given in the case, 15 for the plaintiff and 13 for the defendant. An examination of the instructions discloses that, taking the instructions as a whole, the jury was well instructed.

If it is admitted that the answer of Trooper Schmidt was improper; that the negligence if any, of Nedra Kosowski could not be imputed to the deceased children; that the questions to and answers of Father Sperl may have expressed an opinion as to an ultimate issue of fact; and that a question of fact as to the speed of the truck existed; yet without this court attempting to weigh the evidence, it is difficult to say that the jury could have rendered any verdict consistent with the evidence, other than the one rendered.

█ In such a case, our courts have held that the Appellate Court will not reverse a judgment for errors in instructions to the jury or admission of evidence. Loucks v. Pierce, 341 Ill App 253, 93 NE2d 372. We are not at liberty to disturb a verdict of the jury in the absence of conviction on the part of

this court that the verdict is against the manifest weight of the evidence. Swift & Co. v. Dollahan, 2 Ill App2d 574, 120 NE2d 249. The object of review by this court is not to determine whether the record is completely free of error, but to ascertain whether upon the trial there has been such error as might prejudice the rights of a party. And if this court concludes that the record is free of error prejudicial to plaintiff's rights and that upon the facts it is a reasonable assumption that no different verdict would be reached on another trial, the verdict should be affirmed. Moore & Co. v. Champaign Nat. Bank, 13 Ill App2d 232, 141 NE2d 652. If judgment or findings of trial court is the only one which could be properly rendered consistent with evidence and law of the case, error in instructions is not reversible error. Welch v. Herman, 337 Ill App 322, 86 NE2d 284. The ultimate goal of a court is a fair and just result and when it is clear that the case has been fairly tried and that the judgment is clearly right, the judgment should be affirmed by an Appellate Court. Johnson v. Chicago & N. W. Ry. Co., 9 Ill App2d 340, 132 NE2d 678. Finally, there seems to be a trend away from the strict rule requiring reversing judgments for erroneous instructions. Duffy v. Cortesi, 2 Ill2d 511, 119 NE2d 241; Bunton v. Illinois Cent. R. Co., 15 Ill App2d 311, 146 NE2d 205; Latsis v. Walsh, 28 Ill App2d 91, 170 NE2d 633.

We believe the verdict was supported by the evidence. We further believe that if tried again, the same verdict would be rendered. The judgment will be affirmed.

Judgment affirmed.

ROETH, P. J. and CARROLL, J., concur.