### NEBRASKA STONE CO. v. HURON LODGE NO. 444, B. P. O. E.

(Circuit Court of Appeals, Eighth Circuit. March 26, 1923.)

No. 6132.

Sales ⬅173—Owner's failure to furnish architect's plans and specifications held to excuse delay and defects in delivery.

The owner was not entitled to recover damages from a contractor for furnishing cut stone for a building, because shipments were not made as required by the contract, nor in the order the stone was to be used in building, as also required, where variance from the contract in both respects was due to owner's failure to furnish in time architect's plans and specifications necessary to enable the contractor to cut the stone.

In Error to the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Action at law by Huron Lodge No. 444, Benevolent and Protective Order of Elks, against the Nebraska Stone Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Philip E. Horan, of Omaha, Neb. (Charles W. Sears, of Omaha, Neb., on the brief), for plaintiff in error.

T. H. Null, of Huron, S. D. (Max Royhl, of Huron, S. D., on the brief), for defendant in error.

Before LEWIS, Circuit Judge, and TRIEBER and BOOTH, District Judges.

LEWIS, Circuit Judge. Defendant in error (called the Lodge) constructed a seven-story building at Huron, S. D., to be made up of reinforced concrete, brick veneer, cut stone trimmings and belt courses. Plaintiff in error (called the Stone Company) contracted to furnish the cut stone. It was agreed that the Lodge should furnish such details or explanations to the Stone Company as would be necessary to delineate the plans and specifications and enable it properly to cut the stone, and that delivery should be made in the order in which the stone was required at the building, one car per week beginning the first week in August. The first car was not delivered until November 3d. The greater part of the cut stone went into the lower stories. The Lodge did not wait until the stone was received, and on account of not having the stone at hand brick work was started at the third floor, requiring temporary support. After all of the stone had been furnished the Lodge brought this action for the expense which it had been put to on account of delay in shipping the stone. It adduced evidence which showed that it had been to an expense of about $1,500 for putting in temporary supports of the wall and other items of expense in connection therewith, because the stone was not at hand as needed. At the close of the evidence the court denied the Stone Company's motion for a directed verdict, to which action exception was saved. The Lodge moved for a verdict, and the court announced that the only question was as to the amount of damages that the Lodge ought to recover, and directed the jury, over objection of opposing counsel, to find for the Lodge, and expressed the opinion that the verdict ought to be for $1,500. The jury returned a verdict for that sum.

As a defense the Stone Company alleged in its answer that the Lodge's architects failed to furnish drawings and blueprints for the stone in time for the Stone Company to start the cutting of the stone until in September, 1920, and it attributed the delays in delivery to that failure. The Lodge offered as a witness the president of the Stone Company. From his testimony, uncontradicted, and also from copy of the correspondence between his company and the architects, it appears that none of the final drawings and blueprints showing details of the cut stone were received until after September 1st, and some of them not until about the middle of October. He further testified that after they were received his company had to make its shop plans from them for cutting the stone, that mistakes were found in some of the drawings and blueprints and that correspondence with the architects about the mistakes caused further delay, that it could not begin the cutting of stone until it received the approved drawings from the architects, that a great many drawings and blueprints were necessary from which to make the shop plans for cutting the stone, that mistakes were made by the architects in some of their drawings as to the dimensions of the stone, which were later discovered by the Stone Company, which had to be corrected and shop plans then redrawn to correspond with the corrections, and that immediately upon receiving the final drawings and blueprints from the architects his company went to work as rapidly as they could to get out the cut stone, and exerted every effort to fabricate the stone and deliver it as expeditiously as could be done. He said

the delay in sending the drawings and blueprints not only prevented earlier deliveries of the stone but that the delay also caused them to ship the stone in the order in which it was shipped. The correspondence between the Stone Company and the architects leaves no room to doubt the Stone Company was delayed on account of the failure of the architects to furnish correct drawings and blueprints. None were furnished until a month after the first carload should have been delivered under the contract.

The Lodge abandoned in its argument here any claim that the Stone Company was bound to deliver the first car in August, but contends that the Stone Company was in default and had violated the terms of the contract because it did not deliver a car of stone each week after the first car was delivered on November 3d, and in the order in which the stone was required at the building, insisting that the cut stone for the lower stories should have come first, whereas the cars as shipped each contained stone for the different stories. The court took this view of the case. It was of opinion that the Stone Company was liable because it did not deliver the stone "in sequence as it would be used in the building," when it began to make deliveries. It thus assumed that the delay on the part of the architects did not prevent the Stone Company from furnishing the cut stone in the order required at the building. This assumption was in direct conflict with the testimony of the Stone Company's president. There was no contradiction of his statement as to the delay in furnishing the drawings and blue prints, and that on that account it shipped the stone speedily as cut in the order in which it was shipped in an effort to deliver all of it as quickly as possible. If those were the facts, the Lodge was not entitled to a verdict.

Furthermore, the contract provided that on the first of each month the Stone Company should submit a detailed statement showing the amount claimed on account of stone delivered during the previous month, and that 90 per cent. of that amount should be paid on the 15th of the month. The first car was received at Huron November 3d, the last on January 24th. On the 30th of November an invoice showing that the shipment in the first car amounted to $2,550 was submitted. Ninety per cent. of it would be due on December 15th. The Lodge paid $500 on November 13th, and nothing more until December 27th, when it paid $500, and made no other payment until January 8th. If, as contended by the Stone Company, delay in delivery and order of delivery was attributed to the failure of the architects to promptly furnish drawings and blueprints, the Lodge was not in position to insist upon delivery of the stone in sequence as needed, as a reason for its departure from the terms of the contract in making payments. The proof thus showed that the Stone Company was not liable for a breach, and the Lodge doubly so. There are no facts sustaining the judgment, and the court committed error in law when it instructed the jury to find a verdict for the Lodge.

Reversed and remanded.