SAM W. GOLDFEIN ET AL., APPELLEES, V. CONTINENTAL INSURANCE COMPANY, APPELLANT.

FILED JUNE 16, 1933. No. 28567.

*Wells, Martin, Lane & Offutt,* for appellant.

*George W. Dittrick, Jack Koenigstein* and *Hugh J. Boyle, contra.*

Heard before GOSS, C. J., DEAN, GOOD, EBERLY, DAY and PAINE, JJ., and MESSMORE, District Judge.

MESSMORE, District Judge.

This is an appeal from the judgment entered in an action in the district court for Madison county on a fire insurance policy issued by appellant, defendant below, to appellees, plaintiffs below, under an adjustment of a fire loss sustained by plaintiffs, alleged to have been made by one Frank A. Sucha, plaintiffs alleging that the said Sucha was the duly authorized agent of the company to adjust said loss, and praying for the amount of the adjustment of the loss so made by the said Sucha.

Defendant answered, denying the allegations of the petition, and expressly denying that the said Sucha had any authority to act for it in any adjustment, appraisal or investigation of the loss in question, or that he did or attempted to bind defendant by any of his acts or had authority to waive any of the provisions of said policy of insurance. Other defenses were alleged, which need not be considered here.

At the trial the court limited the issues: First, as to

whether or not an adjustment had been made by Sucha, and, second, whether or not Sucha was an authorized agent of defendant company so that it would be bound by the adjustment.

Plaintiffs' evidence considered for the purposes of this opinion follows: Plaintiff Sam W. Goldfein testified he was acquainted with one Elmer Graham, of Creston, Nebraska, who was in the insurance business; that he had several policies of fire insurance which Graham had written for him, which were set out in the record and the amounts of said policies; that after the fire loss occurred he notified Graham of its occurrence; that the witness and Graham met at the bank, where witness took the policies out of the box and checked them over with Graham, who said he had notified all the companies he represented; that later Graham brought Sucha to witness' store and introduced him; that the policies were delivered to Sucha, who made a memorandum of them, and who, with Rosa Goldfein, one of the plaintiffs, proceeded to adjust the loss and arrive at a figure and adjustment; that Sucha made proofs of loss on all policies except one, including proof of loss under the policy issued by defendant company.

Frank A. Sucha testified that he had worked for the defendant company for a period of 9 years up to about 1928; that subsequently he went into business as an independent adjuster and had adjusted losses for the defendant company, having on occasions adjusted losses for it while on the ground and without prior authorization from it; that in every instance the company had accepted the proofs of loss, except in the instant case.

Mr. Graham testified that he represented several of the companies in which plaintiffs had insurance and had written insurance for them, but not in the defendant company; that he had blanks and was authorized as a soliciting agent of the company, but was not authorized to make adjustments and had merely introduced Sucha to plaintiffs, Sam W. and Rosa Goldfein, as an adjuster.

The evidence further shows that a Mr. C. A. Lederer, agent of the defendant company at Norfolk, Nebraska, and who issued the policy in controversy, had been notified of the fire loss immediately after its occurrence.

For the defendant the witness E. L. Crellin, state agent for it, having charge of the state of Nebraska both in sales and adjustments of insurance losses, testified that every adjustment in so far as Sucha was concerned was a separate assignment; that Sucha had handled certain adjustments for the company since he had become an independent adjuster; that if an adjuster heard of a loss where the company was involved, before making an investigation, he called the company's office by telephone or came to the office or wired, asking that he represent the company on that particular claim; that he did not give Sucha, either orally or in writing, authority to adjust any claims except those expressly or specifically assigned to him; that certain adjusters, including Sucha, had made adjustments in cases where property had been destroyed or damaged by a tornado in a locality without express or direct authorization from the company, but that, however, fire losses were not adjusted in this manner; that he had no knowledge of Sucha investigating the loss in question prior to the time the company received proof of loss in this case from him, and the company was not aware of the fire until Sucha had submitted such proof of loss, which was returned immediately to him, and that the company did not ratify his adjustment nor pay him for any adjustment he made in the matter; that Graham did not write the policy and had no authority to make adjustments but was merely a soliciting agent; that Sucha had adjusted a mercantile loss for the company in one instance, which was a total loss. On cross-examination the witness testified that he had a conversation with Sucha relative to the loss in question; that one of the objections was that the loss was too high; that Sucha was mistaken when he testified that he had adjusted similar losses for

the company. The record does not disclose any other objection by the witness to Sucha's alleged adjustment.

P. E. Nelson testified for the company, stating that he was an adjuster for the Western Adjustment & Inspection Company which adjusted losses for fire insurance companies, representing 200 companies and having adjusted some 3,600 losses; that no custom existed which permitted an adjuster, without previous authority, to accept proofs of loss or make adjustments for insurance companies in Nebraska, and that in each instance the adjuster obtained authority in regard to each loss. While appellant in its brief mentions certain evidence related by this witness in the county court, this evidence is not part of the record in the district court. On cross-examination he testified that he knew nothing about any dealing between Sucha and the defendant company nor whether the custom applied to Sucha's dealing with that company.

Graham testified for the company that he did not write the policy in question and had nothing to do with the company in so far as this policy was concerned and did not know there was such a policy on the stock of goods; that he had no discussion with plaintiff Sam W. Goldfein about the defendant company's policy; that he notified the National Security, and its representative said he would get in touch with the other companies; that Sucha introduced himself to the witness and stated he was an adjuster for the Goldfein loss, but did not mention the defendant company in any particular; that witness called Mr. Sam W. Goldfein and told him the adjuster was there and wanted to see him at the bank, and when Goldfein arrived there witness introduced Sucha to him; that after some conversation the two of them, Sucha and Goldfein, left for Goldfein's store; that witness visited with another party some two doors from the Goldfein store and then started for that place when Sucha and Goldfein came out; that Goldfein stated to witness that things were satisfactory and all right; that Sucha and Goldfein then went back

to the bank, witness following, and when witness got there the papers were being fixed up; that he paid no particular attention to the matter because it was not any of his business.

There was other evidence that Sucha had taken all the policies of the Goldfeins except one to his office in Omaha, had checked them over there and returned them; also evidence to the effect that plaintiffs were permitted by the alleged adjusters, Sucha and Graham, to reopen their store after the adjustment of the loss had been made by Sucha.

Appellant moved for a directed verdict and tendered an instruction thereon, which was overruled.

Appellant contends that the apparent authority of the agent is to be determined by the acts of the principal, and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct has created the apparent authority; that the doctrine of apparent or ostensible authority is merely one application of the law of estoppel, the elements of which must be pleaded and proved, and that appellees concede that estoppel is not a part of this action.

Several authorities are cited under this proposition of law, among them being *Oberne v. Burke,* 30 Neb. 581, where it was held: "A principal is bound equally by the authority which he actually gives, and by that which, by his own act, he appears to give." Further: "The apparent authority of an agent which will bind a principal is such authority as an agent appears to have by reason of the actual authority which he has or which he exercises with the knowledge and ratification of the principal."

It is contended further by appellant that appellees have taken the position of implied agency and concede that appellees' definition of implied agency is correct, that is, that

an implied agency is an actual agency and is a fact to be proved by deduction and inference from other facts; that the word "actual" in this sense means a real and existing agency; that the fact must first be established that Sucha was the actual agent, that is, the real and existing agent of defendant company, and before Sucha could have adjusted this loss it was necessary for the company to know of the loss and to employ him to represent the company in its behalf in adjusting such loss, and, further, that plaintiffs, Sam W. and Rosa Goldfein, did not know that Sucha duly represented the company as an adjuster and that the evidence does not support any actual agency; further, that Sucha did not know that the defendant company had a policy with the Goldfeins until he arrived on the premises and had gone over these policies and found the company's policy among the others, and, having such policy, proceeded to adjust the loss and send proof of loss to the company, and that the company was not bound to accept such proof of loss under the circumstances.

Appellees contend that this is a case of implied agency. The word "implied" is used in law as contrasted with "express;", that is, where the intention in regard to the subject-matter is not manifested by explicit and direct words, but is gathered by implication or necessary deduction from the circumstances, the general language, or the conduct of the parties. 2 Bouvier, Law Dictionary, 1510.

On the question of agency, it is necessary to take into consideration the facts and circumstances in the case, the relations of the parties, what they did, their usual course of dealing, what instructions were given, if any, the conduct of the parties generally, and the nature of the transaction.

"An agency may also be implied from the recognition or acquiescence of the alleged principal as to acts done in his behalf by the alleged agent, especially if the agent has repeatedly been permitted to perform acts like the one in question." 2 C. J. 443.

Sucha testified that he had adjusted losses for the defendant company without express authority, and that he had submitted proofs of loss to the company which were accepted by it and which were settled and paid and Sucha paid for his services. The witness Crellin qualifiedly denied this. That makes a controverted issue of fact on this proposition.

In *Gambrill v. Brown Hotel Co.*, 11 Colo. App. 529, it was held: "It was not necessary that there should be direct and positive proof of express authority, but it might be established by circumstances. An agency may arise by implication from acts done by the agent with the consent or acquiescence of the principal; likewise the scope of his authority may be so determined and defined. * * * Evidence of a course of dealing by the agent sanctioned by his principal is one of the generally recognized modes of showing the extent of the agency."

In *Anderson v. Johnson*, 74 Minn. 171, it was held: "Rule applied that a single act of an assumed agent, and a recognition of his authority by his principal, may be sufficient to prove his authority to do similar acts."

"When the extent of an agent's authority is in issue, no special instructions having been given to him, his actual authority to do a particular act in connection with the transaction may be inferred from proof that the principal had authorized or ratified similar acts in connection with past transactions of the same character, and entrusted to the agent under similar circumstances." *First Nat. Bank of Wilber v. Ridpath*, 47 Neb. 96.

Quoting further from the same opinion, we find this language: "The exercise of such authority in past transactions known to the principal tends to prove that in the particular transaction in question the agent possessed actual authority, there being no special instructions."

We have examined instruction No. 6, to which appellant objects, and noted the objections made thereto, but find that there is no prejudicial error in the instruction,

and that it covers the question of agency in so far as the same is pertinent to the issues as defined by the lower court.

The lower court allowed certain attorney's fees in this case to appellees' attorneys, which they admit in their brief cannot be taxed as costs in this case. Therefore such allowance to them is denied.

We must conclude that whether or not Sucha was the agent of the defendant company at the time he made the adjustment of the loss sustained by plaintiffs under the policy of fire insurance in question was a question of fact for the jury to determine, that the question was submitted under proper instructions and the law applicable to the case, and the jury having decided such question in favor of plaintiffs, they being the constitutional triers of fact, the jury's verdict is conclusive. The judgment of the lower court is reversed as to allowance of attorney's fees and otherwise it is affirmed.

AFFIRMED AS MODIFIED.