## STANDARD NUT MARGARINE CO. OF FLORIDA v. MELLON et al.

### No. 6183.

United States Court of Appeals for the District of Columbia.

Argued May 8, 1934.

Decided June 25, 1934.

Geo. N. Murdock, of Chicago, Ill., and Lloyd Anderson, of Washington, D. C., for appellant.

Frank J. Hogan, D. D. Shepard, W. J. Donovan, and Ralstone R. Irvine, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

MARTIN, Chief Justice.

An appeal from an order sustaining demurrers to the declaration and judgment accordingly.

The appellant, plaintiff below, is a corporation which from April, 1928, to July 10, 1931, owned and operated a business at Jacksonville, Fla. The defendant Andrew W. Mellon during the same period was Secretary of the Treasury of the United States. At the same time the defendant Ogden L. Mills was Assistant Secretary or Acting Secretary of the Treasury.

The plaintiff in its declaration alleges, in substance:

That throughout the aforesaid period it manufactured and sold a certain food product known as "Southern Nut Product," which was composed wholly of vegetable oils, salt, water, and coloring matter, and contained no animal oils or fat or any element named as an ingredient of oleomargarine as defined by

Act of Congress of August 2, 1886 (24 Stat. 209 [26 USCA §§ 194, 207, 541 et seq.]), and that plaintiff's product accordingly was not taxable as oleomargarine under that act.

That in April, 1928, when plaintiff began the manufacture and sale of its product the Commissioner of Internal Revenue, with the knowledge and under the direction of defendants, assured plaintiff that its product was not taxable as oleomargarine nor subject to the provisions of the oleomargarine law, and that such products had been held by the courts not taxable as oleomargarine.

That neither defendants nor their subordinates have ever by analysis found or decided that plaintiff's product was lawfully taxable as oleomargarine, but nevertheless the defendants afterwards arbitrarily, illegally, capriciously, contemptuously, oppressively, and without color of law demanded of plaintiff the tax for the manufacture of its product as oleomargarine and demanded of plaintiff's dealers in the product that they procure licenses as oleomargarine dealers and pay the special tax required to be paid by such dealers under the Act of August 2, 1886, supra.

That defendants and their deputies, agents, and employees with their knowledge and consent and under their direction assessed plaintiff's product with taxes under the classification of oleomargarine and demanded payment of the same and thereby interfered with and destroyed the plaintiff's business throughout the country, although defendants then well knew that there was no law making plaintiff's product taxable as oleomargarine prior to July 10, 1931, when products such as the plaintiff's first became legally taxable as oleomargarine under the act of Congress effective on that date. 46 Stat. 1022 (26 USCA § 541 and note).

That in January, 1930, plaintiff sought and secured from the District Court of the United States for the Southern District of Florida an injunction against the collector of internal revenue for the district of Florida enjoining him from in any way attempting to tax plaintiff's product as oleomargarine, or to demand that plaintiff's dealers in such product should procure a license as dealers in oleomargarine and otherwise comply with the provisions of the oleomargarine laws. That defendants caused an appeal to be taken from this decree, and in February, 1931, the decision was affirmed by the Circuit Court of Appeals for the Fifth Circuit. Miller v. Standard Nut Margarine Co., 49 F.(2d) 79. That defendants thereupon appealed from this decision to the United States Supreme Court which in February, 1932, affirmed the decree of the Circuit Court of Appeals. Id., 284 U. S. 498, 52 S. Ct. 260, 76 L. Ed. 422.

That notwithstanding the granting of the injunction by the District Court in Florida, defendants, their deputies and agents, continued to arbitrarily, and oppressively interfere with the business of plaintiff in other states, namely, Georgia, South Carolina, North Carolina, Alabama, Mississippi, Tennessee, and Louisiana by demanding that plaintiff's dealers procure licenses as dealers in oleomargarine and comply with the oleomargarine laws or discontinue the sale of plaintiff's product.

That, as a result of these arbitrary, wanton, capricious, illegal, malicious, oppressive, and contemptuous acts of defendants, plaintiff's business in its product was greatly injured and interfered with in the state of Florida and in the other states and it was deprived of and lost large profits which were accruing to it and would have accrued to it had it been permitted to continue its business unmolested by defendants until July 10, 1931, and plaintiff, because of the injuries it has sustained, demands judgment in damages against defendants in the sum of $200,000 and additional punitive damages in the sum of $50,000 for the wrongs above complained of.

The defendant demurred to the declaration for want of substance. The lower court sustained the demurrers. Whereupon the present appeal was taken.

■ By the act of August 2, 1886, supra, a tax is imposed upon the manufacture and sale of oleomargarine as defined by section 2 of the act (26 USCA § 541), which reads as follows:

"Sec. 2. For the purposes of this chapter certain manufactured substances, certain extracts, and certain mixtures and compounds, including such mixtures and compounds with butter, shall be known and designated as 'oleomargarine,' namely: All substances known [heretofore] as oleomargarine, oleo, oleomargarine oil, butterine, lardine, suine, and neutral; all mixtures and compounds of oleomargarine, oleo, oleomargarine oil, butterine, lardine, suine, and neutral; all lard extracts and tallow extracts; and all mixtures and compounds of tallow, beef fat, suet, lard, lard oil, vegetable-oil annotto, and other coloring matter, intestinal fat, and offal fat made in imitation or semblance of butter, or when so made, calculated or intended to be sold as butter or for butter."

It may be observed that the definition of oleomargarine contained in the statute specifies only such products as are derived from animal oils or fats, and does not include any product composed exclusively of vegetable oils, unless by force of the term "vegetable-oil annotto" which is contained therein. Annotto is a vegetable coloring matter. If the term "vegetable-oil annotto" as used in the paragraph be construed to include products composed exclusively of vegetable oil, then and in such case the product of plaintiff would be included within the statutory definition of oleomargarine and would be subject to the tax imposed by the act. This construction was adopted by the Commissioner of Internal Revenue based largely upon the legislative history of the enactment. It became the subject of much litigation.

In Miller v. Standard Nut Margarine Co., 284 U. S. 498, 52 S. Ct. 260, 76 L. Ed. 422, decided 1932, the controversy was finally decided by the Supreme Court of the United States which held that the definition in section 2 of the act (26 USCA § 541) did not include products composed exclusively of vegetable oils, and therefore that appellant's product was not taxable under the act. It follows that the decision of the Commissioner imposing a tax upon the plaintiff's product as oleomargarine was erroneous.

Notwithstanding this fact, however, we are of the opinion that the defendants are not personally liable in damages for their erroneous construction and application of the statute. We think the case is governed by the rule that the head of an executive department of the United States government cannot be held in damages for acts done by him in relation to matters committed by law to his control or supervision. It became the official duty of the Commissioner to determine whether the product manufactured by the plaintiff was subject to the tax prescribed by the act. It is true that the Commissioner construed the statute erroneously, but nevertheless the subject-matter of the assessment was within his jurisdiction and authority. In such case error on his part does not expose him to an action for damages, and this is none the less true even though his error be described as arbitrary, capricious, and malicious.

In Spalding v. Vilas, 161 U. S. 483, 498, 16 S. Ct. 631, 637, 40 L. Ed. 780, it is said: "We are of opinion that the same general considerations of public policy and convenience which demand for judges of courts of superior jurisdiction immunity from civil suits for damages arising from acts done by them in the course of the performance of their judicial functions apply, to a large extent, to official communications made by heads of executive departments when engaged in the discharge of duties imposed upon them by law. The interests of the people require that due protection be accorded to them in respect of their official acts. As in the case of a judicial officer, we recognize a distinction between action taken by the head of a department in reference to matters which are manifestly or palpably beyond his authority, and action having more or less connection with the general matters committed by law to his control or supervision. * * * In the present case, as we have found, the defendant, in issuing the circular in question, did not exceed his authority, nor pass the line of his duty, as postmaster general. The motive that impelled him to do that of which the plaintiff complains is therefore wholly immaterial. If we were to hold that the demurrer admitted, for the purposes of the trial, that the defendant acted maliciously, that could not change the law."

In Yaselli v. Goff (C. C. A.) 12 F.(2d) 396, 404, 56 A. L. R. 1239, affirmed 275 U. S. 503, 48 S. Ct. 155, 72 L. Ed. 395, it was said among other things: "The courts have held that a prosecuting attorney is not liable in an action for a prosecution instituted with malice and without probable cause."

In De Arnaud v. Ainsworth, 24 App. D. C. 167, 5 L. R. A. (N. S.) 163, it is held that public policy affords absolute protection and immunity for what may be said or written by an officer in his official report or communication to a superior, when such report or communication is made in the course and discharge of official duty, and the question of motive, or whether there was a want of good faith in the making of such report, is immaterial; so that a report by the chief of the record and pension office of the War Department to the Secretary of War, made under departmental regulations, and as the result of an application for a medal of honor for distinguished services, wherein the applicant is charged with fraud, is absolutely privileged.

In Farr v. Valentine, 38 App. D. C. 413, Ann. Cas. 1913C, 821, it is held that statements in a letter from the Commissioner of Indian Affairs to the Secretary of the Interior, recommending the dismissal of an employee of the Indian Bureau on the ground of his unfitness for his position, are privileged, and cannot be made the basis of an action of libel by the employee against the Commis-

sioner, when relevant to the purpose of the letter; and oral statements officially made by the Commissioner to the Secretary, concerning the same employee and his unfitness to remain in the service, embodying the substance of letters written by the Commissioner to subordinates in the field, are also privileged, and cannot be made the basis of a count for slander in the same action.

In Brown v. Rudolph, 58 App. D. C. 116, 25 F.(2d) 546, it is held that, in preliminary proceedings looking to a formal commitment of an insane person, the Commissioners of the District of Columbia exercise a discretion vested in them by Act of April 27, 1904 (24 USCA §§ 215–220 [D. C. Code 1929, T. 16, §§ 31–36]), and are not liable in damages though they made a mistake.

In Mellon v. Brewer, 57 App. D. C. 126, 18 F.(2d) 168, 53 A. L. R. 1519, it is held that a letter from the Secretary of the Treasury of the United States to the President concerning an investigation of the Treasury Department, which plaintiff had been conducting for nearly three years without progressing beyond the point of suspicion, is a privileged communication, and that the motive underlying the discharge of an official duty as regards libelous communications is not material, since otherwise freedom which ought to exist in discharge of public duty might be seriously restrained. See Kendall v. Stokes, 3 How. 87, 98, 11 L. Ed. 506; Decatur v. Paulding, 14 Pet. 497, 10 L. Ed. 559, 609; Bradley v. Fisher, 13 Wall. 335, 20 L. Ed. 646; United States to Use of Parravicino v. Brunswick, 63 App. D. C. 65, 69 F.(2d) 383.

It is true that none of the foregoing decisions relates directly to an erroneous assessment of taxes upon the property of a taxpayer, but we think that the general principles underlying the cases are authority for our conclusion. We are cited to no case wherein the Secretary of the Treasury personally has been held liable in damages for an erroneous assessment of taxes. This fact is significant in view of the very considerable number of cases in which assessments of income taxes, as well as other assessments, have been declared by the courts to be erroneous. If the Secretary of the Treasury may lawfully be brought to trial before a jury upon a claim for damages because of an erroneous assessment of taxes whenever it is charged that his action was arbitrary, capricious, and malicious, it would expose such officer to a risk which is contrary to public policy.

We accordingly hold that the judgment of the lower court should be and it is affirmed with costs.