(No. 22833.—
THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.* THE ELGIN HOME PROTECTIVE ASSOCIATION *et al.* Appellees.

*Opinion filed February 21, 1935.*

380

Otto Kerner, Attorney General, and John B. Harris, for appellant.

Charles L. Abbott, and James J. Kirby, for appellees.

Mr. Justice Farthing delivered the opinion of the court:

A direct appeal has been perfected to this court from a decree of the circuit court of Kane county because the State is an interested party. The Attorney General filed a

bill on behalf of the People to restrain the Elgin Home Protective Association, J. H. Jones, its president, and Ada L. Brown, its secretary, from conducting a mutual insurance business unless and until the association complied with "An act to incorporate mutual benefit associations on the assessment plan, intended to benefit the widows, orphans, heirs and devisees of deceased members thereof and members who have received a permanent disability and to provide for and regulate the control of such associations and to provide penalties for violation of the provisions thereof," approved June 27, 1927, (Laws of 1927, p. 583,) or until the association should in some other respect become qualified under the laws of this State to engage in the insurance business. The chancellor heard the cause on the pleadings and a stipulation of facts and entered a decree finding that the Elgin Home Protective Association was not subject to the provisions of the Mutual Benefit act and dismissing the appellant's bill for want of equity.

The Elgin Home Protective Association is a voluntary unincorporated association. It conducts the business of a mutual benefit society. Its office is located in the city of Elgin, in Kane county. It has operated continuously since its organization in 1910. It has approximately fourteen hundred members. Membership is restricted to persons between the ages of fourteen and forty-five years and to residents of the city of Elgin. It agrees to pay to beneficiaries of members the sum of one dollar for every member in good standing at the time of death of the insured member but not to exceed $1000. A membership fee of $3.75 is charged, and upon the death of a member an assessment of one dollar is made upon each surviving member. The dues are a dollar and a half a year. The secretary, who is the only salaried officer, receives $1500 a year.

The sole question presented is whether an unincorporated mutual benefit society organized and doing business in this State prior to the enactment of the Mutual Benefit

act of 1927 can be compelled to incorporate under that or some other act as a prerequisite to continuing its insurance business. The purpose of the act as set forth in its title is, "An act to incorporate mutual benefit associations on the assessment plan, * * * and to provide for and regulate the control of such associations and to provide penalties for violation of the provisions thereof." Section 1 provides: "Mutual benefit associations, on the assessment plan, * * * may be formed under this act as hereinafter provided." Section 2 provides: "Any five or more persons, who are *bona fide* citizens and voters of this State, desiring to form a mutual benefit association under this act shall file with the Director of Trade and Commerce, [now the Director of Insurance,] in writing, a declaration of their desire to form such association," etc. Then follows a list of the things that they must set forth in that declaration. Section 13 provides: "Any association organized to insure the lives of its members which provides for the payment of losses and the expenses of the management and prosecution of the business by payments, to be made upon assessments as required, by members holding similar contracts and wherein the members' liability to contribute to the payment of losses accrued, or to accrue, is not limited to a fixed sum shall be deemed to be mutual benefit associations engaged in the business of life insurance upon the mutual benefit assessment plan and shall be subject to the provisions of this act, and such associations shall be subject to the provisions of no other insurance law of this State except as in this act definitely provided. This act shall not apply to associations, the membership of which is confined to the membership of any fraternal organization operating on a secret or ritual basis, or of any lodge thereof." Section 15 provides: "Any existing domestic corporation transacting business under an act entitled, 'An act concerning corporations,' approved April 18, 1872, as a corporation not for pecuniary profit, for the purpose of

benefiting the widows, orphans, heirs and devisees of deceased members thereof, and members who have received a permanent disability, and where the member shall receive no money as profit or otherwise except for permanent disability; and all associations engaged in the business of insurance of lives of its members and not subject to any other of the insurance laws of this State, shall re-incorporate under its existing corporate name, or a corporate name selected for that purpose in accordance with this act under the provisions of this act upon filing with the Director of Trade and Commerce, a declaration of its desire to do so, signed and duly acknowledged by a majority of the board of directors, trustees or managers, together with a certificate of association as required of associations proposing to organize under the provisions of this act. Upon receipt of such declaration and certificate of association, the Director of Trade and Commerce [now the Director of Insurance] shall examine same and if he shall find that such certificate of association is not inconsistent with the provisions of this act he shall cause same to be recorded in a book to be kept for that purpose * * * and such corporation shall thereupon be deemed to be incorporated under the provisions of this act." By section 21 the Director of Insurance is given the power to inspect the associations organized under this act. Section 27 prescribes the fees he may charge, and section 28 requires that an annual report shall be filed with him in such form as he may direct. Section 9 gives him power to approve the form of the certificates of membership issued by mutual benefit associations.

The primary object in construing a statute is to ascertain and give effect to the true intent and meaning of the legislature in enacting it, and it is the intention of the law-makers that makes the law. (*Hoyne* v. *Danisch*, 264 Ill. 467.) For the purpose of ascertaining and giving effect to the intention of the law-makers it is proper to consider

the occasion and necessity for the law. Where the intention of the legislature in adopting the act is clearly expressed and its objects and purposes are clearly set forth, the courts are not confined to the literal meaning of the words used when to do so will defeat the obvious legislative intention and result in absurd consequences not contemplated or intended by the legislature. In such cases the literal language of the statute may be departed from, and words may be changed, altered, modified and supplied, or omitted entirely, if necessary to obviate any repugnancy or inconsistency between the language used and the intention of the legislature as gathered from a consideration of the whole act and the previous condition of legislation upon that subject. (*People* v. *Fox,* 269 Ill. 300; *People* v. *Patten,* 338 id. 385.) Where the rights of the public or of third persons are involved, words in the statute importing permission or authority may be read as mandatory and words imposing a command may be read as permissive, whenever, in either case, such a construction is made necessary by the evident intention of the legislature. The words "may" and "shall," when used in a statute, will sometimes be read interchangeably, as will best express the legislative intent. (*People* v. *Board of Supervisors,* 308 Ill. 543, 548; *Canal Comrs.* v. *Sanitary District,* 184 id. 597.) The business of insurance is stamped with a public interest, and those engaged in that business must yield obedience to necessary and proper regulations by the State in the exercise of its police power. *North American Ins. Co.* v. *Yates,* 214 Ill. 272, 276.

The legislature by adopting the act in question has prescribed a method of regulating the business done by mutual benefit associations on the assessment plan, intended to benefit the widows, orphans, heirs and devisees of deceased members thereof and members who have received a permanent disability. The title of the act provides that it is an act to incorporate and to provide for and regulate

the control of such associations and provide penalties for violation of the provisions of the act. Although the first section of the act uses the word "may" when it says that such associations may be formed under this act, it is apparent that if any such association is formed it must be under the provisions of this act. The legislature could not compel persons to form these companies, but it has the power, and has exercised it, to require that if any persons desire to form a mutual benefit association they must comply with the terms of this act. Compliance with this act might appear not to be mandatory from section 2, which provides that any five or more persons desiring to form a mutual benefit association under this act shall file a declaration of their desire with the Director of Insurance, but the language of section 13 plainly shows that the legislature intended to bring all mutual benefit associations under this act. There a mutual benefit association is defined in terms broad enough to include such an unincorporated association as the one here. All such associations are made subject to the provisions of this act, and they are exempted from the provisions of the other insurance statutes of this State with certain exceptions. The language of section 15 is a strong expression by the legislature of its intention to incorporate under this act all such associations as the appellee association. By it all insurance companies previously operating under the act of 1872 as corporations not for pecuniary profit were required to comply with the provisions of the present act. It also provided that all associations not subject to any other of the insurance laws of this State shall re-incorporate under their existing corporate names, or corporate names selected for that purpose in accordance with this act, under the provisions of the act upon filing with the Director of Trade and Commerce [now the Director of Insurance] a declaration of their desire to do so. It cannot be doubted that the language of this section is mandatory, notwithstanding that such an associa-

tion must notify the Director of Insurance of its desire to so incorporate. It has no choice but to organize under this act or to go out of business.

It is insisted by appellees that section 15 applies only to pre-existing corporations, and they point to the words "shall re-incorporate" as they appear in the section. The literal meaning of this phrase must give way to the expressed intention of the legislature in section 13 that this act shall govern all mutual benefit associations. When it is later declared in section 15 that certain corporations and all associations engaged in the mutual benefit insurance business shall re-incorporate, the legislature is referring to all associations covered by section 13 of the act, incorporated and unincorporated alike, and by requiring that certain of them shall re-incorporate it intended that all such associations should become incorporated under the present act. This interpretation of the language carries out the obvious intention of the legislature as expressed in the title and by the language of the act and is justified under the rules we have before referred to. The object was to incorporate and provide for and regulate the control of associations such as the appellee association by bringing all those engaged in this business under the Mutual Benefit act of 1927, and this object was fully expressed.

It is contended that the appellee association was not required to incorporate under section 15 because it was subject to another insurance law, viz., "An act in relation to the liquidation and dissolution of delinquent insurance companies, associations and societies," approved June 26, 1925. (Laws of 1925, p. 446.) This contention is unsound for the reason that by section 13 associations such as the appellee association were made subject to no other insurance law except as therein definitely provided. One of the exceptions so provided was that the dissolution of such associations was to be made under the act governing delinquent insurance companies.

For the reasons indicated the decree of the circuit court of Kane county was erroneous. It is therefore reversed and the cause is remanded to that court, with directions to enter a decree in accordance with the prayer of the bill.

*Reversed and remanded, with directions.*