UNITED STATES v. JONES.
No. 10607.

United States Court of Appeals
Seventh Circuit.
Feb. 20, 1953.

Rehearing Denied May 19, 1953.

Charles J. Monahan, Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Atty. and Richard E. Gorman, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Defendant appeals from a conviction and sentence following a jury verdict of guilty on an indictment in fifteen counts charging violations, in five, of the purchase provisions of the Harrison Narcotic Act, 26 U.S.C. § 2553(a), in five others, of the sales provisions, 26 U.S.C. § 2554(a), and in the remaining five, of the Narcotic Drugs Import and Export Act, 21 U.S.C.A. § 174. He contends that evidence of damaging import, introduced over his motion to suppress, had been obtained in violation of the search and seizure provisions of the Fourth Amendment to the Constitution.

The indictment was returned on July 26, 1951, and a bench warrant for defendant's arrest issued immediately. At approximately the same time, Agent Fields, acting for the Bureau of Narcotics, procured a search warrant for a building located at 5420 Indiana Avenue, Chicago, which the government has, at all times, conceded to have been invalid.

Fields, accompanied by Kreiger, a "Treasury Enforcement Agent, assigned to the Bureau of Narcotics",[1] proceeded to the address specified. Neither of them had with him the warrant for defendant's arrest, but both were aware of its issuance and of the return of the indictment. Entering the building and observing defendant emerging from the first floor apartment, they approached him, notified him that he was under arrest upon the charges contained in the indictment and searched his person, finding a quantity of heroin hydrochloride and a number of bills identifiable by their serial numbers and, according to the government's evidence, used by an informer in the purchase of narcotics from defendant. Defendant stated that he was only a "roomer"; that his landlady was a respectable person and did not know his business and that, to prevent disturbance, he would show the agents where the "stuff" was, and led them to his room, pointing out a dresser drawer. There the agents found substantial quantities of heroin hydrochloride and paraphernalia usually employed by narcotic traffickers in weighing, measuring and packaging narcotics. The agents then left the premises with defendant in their custody.

Prior to trial defendant moved to suppress as evidence all articles taken from his person and his quarters on the grounds: (1) the "search warrant * * * was invalid," (2) the Agents "held no search warrant for a search of defendant's person"; (3) "the search warrant for the premises specifically excluded a search of defendant's person"; (4) the "Government Agents had no arrest warrant for defendant." In reply to the motion the government conceded that the search warrant was void but urged "that the evidence seized at the time of the defendant's arrest from his person and in the apartment * * * was seized incident to a lawful arrest."

It is well established that the insufficiency of a search warrant is immaterial when the search and seizure may be otherwise justified. Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231; Vachina v. United States, 9 Cir., 283 F. 35, 36; Fryar v. United States, 6 Cir., 3 F.2d 598; Billingsley v. United States, 8 Cir., 16 F.2d 754, 756; Lee Kwong Nom v. United States, 2 Cir., 20 F.2d 470, 472; State ex rel. Merrell v. District Court, 72 Mont. 77, 231 P. 1107, Cf. Murby v. United States, 1 Cir., 293 F. 849, 852. "When a man is legally arrested for an offense, whatever is found upon his person or in his

---

1. In so far as we are advised, this designation is a civil service classification.

control which it is unlawful for him to have and which may be used to prove the offense may be seized and held as evidence in the prosecution." Carroll v. U. S., 267 U.S. 132 at page 158, 45 S.Ct. 280, 287, 69 L.Ed. 543. In the present case, the trial court found that the search had been made in pursuance of and as an incident to the arrest, overruled the motion and received in evidence the articles taken from defendant's person and those found in the room at 5420 Indiana Avenue.

In his argument before the trial court, counsel for defendant made no contention that the agents were not legally empowered to make an arrest but argued only that the search warrant was invalid and the search unlawful because the officers had no warrant. The contention now made is an obvious after-thought. In his statement of points relied upon on appeal, defendant, for the first time, raised the ground upon which he seeks reversal in the averment: "Narcotic agents have no authority to execute warrants of arrest." At no time prior to the trial, during its pendency, or, at its conclusion, by a motion for new trial or otherwise, was the contention presented to the trial court that such agents possess no power to arrest. Instead, after the government's concession of invalidity of the search warrant and its declaration that it was relying upon a search made in pursuance of and incidental to an arrest, defendant's position in the District Court was solely and specifically that the arrest was unlawful because the arresting officers were not in possession of the bench warrant at the time the arrest was made. At no time did he question the agents' statutory power to arrest persons charged with violation of the several acts relating to narcotic drugs.[2]

Rule 9(c) (1) of the Federal Rules of Criminal Procedure provides, 28 U.S.C. that a warrant issued upon an indictment "shall be executed * * * as provided in Rule 4(c) (1), (2) and (3)." Rule 4(c) (1) that the "warrant shall be executed

by a marshal or by some other officer authorized by law" and Rule 4(c) (3) that "the officer need not have the warrant in his possession at the time of the arrest, but upon request he shall show the warrant to the defendant as soon as possible [and] * * * shall * * * inform the defendant of the offense charged and of the fact that a warrant has been issued." See United States v. Donnelly, 7 Cir., 179 F.2d 227, for application of these rules. Inasmuch as the testimony adduced during the hearing on the motion to suppress supported a finding that the requirements of Rules 4 and 9 had been complied with, *i. e.*, that, at the time of his arrest, defendant was informed of the charges against him and advised that a warrant for his arrest had issued, and that he was, subsequently, shown the warrant and as no question of the power to arrest was raised, it is clear that the court, as apparently did defendant, assumed *sub silentio* that the agent's power to arrest was unquestioned.

Generally speaking, appellate courts will not recognize or determine assigned errors not previously brought to the attention of the trial court. This rule is, among other reasons, designed to effectuate the orderly administration of justice and is founded upon sound reasoning. It has been applied in a situation similar to the one before us. See Cromer v. United States, 78 U.S.App.D.C. 400, 142 F.2d 697, certiorari denied 322 U.S. 760, 64 S.Ct. 1274, 88 L.Ed. 1588. However, Rule 52(b) of the Federal Rules of Criminal Procedure provides that "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." By judicial interpretation this Rule has been read to mean not brought to the attention of the trial court. United States v. Raub, 7 Cir., 177 F.2d 312.

The application of Rule 52(b) rests, in large measure, upon the exercise of our sound judicial discretion. United States

---

2. On oral argument before this court, appellant's counsel stated that he had advanced the proposition relied upon in argument before the District Court. A careful reading of the printed transcript, which, by stipulation of counsel, is the entire record in the proceedings below, reveals that at no time was this argument advanced to the District Court.

v. Jonikas, 7 Cir., 187 F.2d 240; United States v. Williams, 2 Cir., 146 F.2d 651. Even prior to the adoption of Rule 52(b), the Supreme Court gave some indication of when the discretion should be exercised in favor of review in these words: "In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, * * * notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings." United States v. Atkinson, 1936, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555.

██ In U. S. v. Raub, 7 Cir., 177 F.2d 312 at page 315, we said: "Such errors must, however, be substantial and capable of resulting in miscarriage of justice to warrant the reversal of a judgment of conviction based on ample evidence." We are of the opinion that the circumstances of this case are such that we are fully justified in refusing to review the alleged error. In view of the failure of defendant's counsel to advance the explicit contention here asserted, but "consciously failed to save the point" in the court below, we can not say that the error was obvious. Thus, where defendant failed to raise in the trial court the question relied upon on appeal, we refused to apply the rule inasmuch as there was no obvious error and no showing of mistake "seriously" affecting "the fairness, integrity, or public reputation of judicial proceedings." U. S. v. Jonikas, 7 Cir., 187 F.2d 240. There the evidence indicated guilt beyond all reasonable doubt. Here there was voluminous testimony of the repeated sales and possession of narcotics charged in the indictment, irrespective of the physical evidences obtained, subsequent to the indictment, in the search.

Nor can it be convincingly argued, that, in view of the overwhelming evidence over and above that of which complaint is made and defendant's failure to raise the point now relied upon below, the case is one seriously affecting the "fairness, integrity or public reputation of judicial proceedings." We shall not, in a flagrant case,

give cognizance to a complaint first made to us and thus give defendant two bites at the same cherry, by declaring erroneous action of the trial court, the fault of which defendant did not see fit to make the court aware, when he had the opportunity to do so. In a similar situation the Supreme Court said: "Inasmuch as the issue would lead to exploration of the law * * * when the defense was not raised in either court below, * * * we do not undertake to determine on this record whether Di Re's arrest satisfied this provision of the New York law." United States v. Di Re, 332 U.S. 581, 588, 68 S.Ct. 222, 225, 92 L.Ed. 210. The rule that an appellate court will not notice errors not brought to the attention of the trial court is founded upon considerations of fairness to the court and to the parties and of the public interest in bringing litigation to an end after fair opportunity has been afforded to present all issues of law and fact. U. S. v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L. Ed. 555. The court, in that case, after commenting upon the unusual cases where the exception to the rule (as expressed in Rule 52(b) will apply, said: "But no such case is presented here. The judgment must be affirmed for the reason that the error assigned was not made the subject of appropriate exception or request to charge upon the trial." We think the same result must follow here.

██ We should observe further that the evidence upon the hearing of the validity of the search was such that the trial court might very properly have believed that defendant consented to the search of the apartment and waived any objection to it, at the time it occurred. Under the Fourth Amendment the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, may not be violated. But a defendant can consent to a search of his property, and a search made as a result of such consent or with his acquiescence does not violate this amendment. Numerous instances of the application of this doctrine appear in the footnote.[3] Thus, in

3. Campbell v. U. S., 6 Cir., 151 F.2d 605; Hodges v. U. S., 10 Cir., 35 F.2d 594, modified 10 Cir., 36 F.2d 356; Cantrell v. U. S., 5 Cir., 15 F.2d 953, certiorari

Stobble v. U. S., 7 Cir., 91 F.2d 69, 70, where defendant pointed out to the officers a box on a table and said: "There is the stuff", and picked up the box and handed it to the officer, who opened it and found therein narcotics, we said 91 F.2d at page 71: "She is in no position to complain of a seizure made under such circumstances. Howell v. United States, 5 Cir., 296 F. 911; Key v. United States, 8 Cir., 26 F.2d 241."

In view of our conclusions, we do not reach the question attempted to be raised here for the first time of whether a "Treasury Enforcement Agent, assigned to the Bureau of Narcotics" or a Narcotic Agent has power to make the arrest. Perhaps, however, we should observe, by way of clarification, that U. S. v. Pisano, 7 Cir., 193 F.2d 361, is not decisive of that question. That case was similar to the instant one in that there, as here, (1) the defendants had been indicted for violations of the Harrison Act, (2) a bench warrant had issued for their arrest, (3) they had been arrested, at their apartment, by agents of the Bureau of Narcotics, and (4) a search of the apartment had followed, revealing incriminating materials subsequently introduced at trial, over defendants' motion to suppress. No question as to the authority of Federal Narcotic Agents to arrest was raised; the scope of our inquiry was limited to the validity of an arrest without possession of an existing bench warrant and the reasonableness of the incidental search. We merely assumed without question, as did the parties, that Narcotic Agents possess the power to arrest persons accused of violating the several narcotic laws. Under the circumstances there existing, the decision is not determinative of the point sought to be raised here.

The judgment is affirmed.

### Petition for Rehearing

Before MAJOR, Chief Judge and DUFFY and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Since our opinion was announced, defendant has filed a petition for rehearing and a motion for leave to supply in the record a colloquy in the District Court not included in his designation of what was to be included and hence not submitted to us. In view of the character of these two documents and the seriousness of the questions raised we have thought it well to submit this supplemental opinion. In order to portray clearly the nature of the motion to supply additional matter and the issue raised therein, it is necessary to add somewhat to the facts stated in our original opinion.

Defendant, on December 12, 1951 filed in the District Court his motion to supress evidence seized at the time of his arrest, on the grounds that the agents making the search had "no valid search warrant", and that the agents "held no arrest warrant". No other ground was asserted. The government answered, conceding that no valid search warrant had issued but contending that the property had been seized as an incident to the arrest. At the hearing on the motion and answer, at which extended evidence was presented, February 8, 1952, defendant's counsel stated his position thus: " * * * they are shifting their position and trying to have it appear that they did not make this search or make this arrest by reason of the search warrant, but they made it upon some other ground, I don't know what." He also said that, though the government admitted that no valid search warrant had issued, "The ground of (my) motion is that the affidavit of the complaint attached to the search warrant, upon which the search warrant is based, is insufficient in that it fails to state any fact from which the Commissioner would determine the existence of probable cause * * *." He made not the slightest suggestion at this hearing on the merits of his motion that the agents were without authority to make an arrest. Consequently, inasmuch as the property had been seized as an incident to

denied 273 U.S. 768, 47 S.Ct. 572, 71 L.Ed. 882; Grice v. U. S., 4 Cir., 146 F.2d 849; U. S. v. Shules, 2 Cir., 65 F. 2d 780; Poetter v. U. S., 9 Cir., 31 F.2d 438; Lisansky v. U. S., 4 Cir., 31 F.2d

846, 67 A.L.R. 67, certiorari denied 270 U.S. 873, 49 S.Ct. 514, 73 L.Ed. 1008; Windsor v. U. S., 6 Cir., 286 F. 51, certiorari denied 262 U.S. 748, 43 S.Ct. 523, 67 L.Ed. 1212.

defendant's arrest, the court denied the motion.

Defendant was sentenced on April 3, 1952, and on the same day filed notice of appeal. On April 9, defendant filed his "designation of contents of the record on appeal", in which he requested, in so far as a transcript of testimony was concerned, only a transcript of the evidence taken "at the hearing of the motion to * * * suppress evidence heard on February 8, 1952" and a transcript of the evidence taken upon the trial of the cause, April 1, 2, 1952. On April 11, he filed his statement of points to be relied upon on appeal, setting up, among others, the ground that narcotic agents have no authority to make arrests. Thus it will be seen that defendant did not designate any colloquy or any evidence other than that taken at the hearing on the motion on February 8 and at the trial. The reporter certified to the evidence taken at the hearing of the motion on July 5, 1952 and to the evidence taken at the trial on the same day, so that the record came to us on defendant's own designations.

▮ Relying upon what he had brought to us, we decided the case and announced our opinion. Now, subsequent to the complete determination of the cause, he seeks to amend his designation of contents of the record and to supply a supplemental transcript, which consists only of a colloquy between the court and defendant's counsel on January 10, 1952, concerning the search, practically a month before the full hearing on the motion and answer. On January 10 defendant announced that he wanted to take some evidence, and the court thereupon set the hearing for February 8. In the course of the colloquy, defendant did suggest that narcotic agents had no right to arrest, saying that he had been searching for some rule which authorized them to make arrests and could not find any. It thus appears undisputed that even though defendant did have a colloquy with the court on January 10 and mentioned the contention now raised, he did not thereafter raise the point at the hearing on the merits of his motion at the time evidence was taken and complete hearing had or at any other time prior to judgment. Not one word was mentioned at that hearing concerning lack of authority of agents to arrest. In such situation defendant must be held to have abandoned the point.

▮ Moreover we seriously question whether defendant may, after final decision in this court, amend his original designation in the District Court. He knew then what had happened in the trial court; yet he designated only the evidence at the two specified hearings. He says now that the reporter was ill and did not get the two transcripts ready until July. But this creates not the slightest excuse for his not having included what he now wants in his designation.

Thus it is clear, we think, that, for the two reasons mentioned, there can be, under the record properly considered, no basis for reversal of the judgment. However, defendant's contention is so zealously pressed that, in order that our position may be clear, we think it best to meet it upon the merits. Consequently we have taken into consideration the supplemental matter tendered by defendant and assumed, *arguendo,* that the question is properly before us.

▮ At the outset, perhaps, we should observe that, inasmuch as, after careful search, we have found no statute literally conferring upon agents of the Narcotic Bureau power to arrest, we have examined the statutes of Illinois, for, " * * * In absence of an applicable federal statute the law of the state where an arrest without warrant takes place determines its validity." United States v. Di Re, 1948, 332 U.S. 581, 589, 68 S.Ct. 222, 226, 92 L.Ed. 210. See also Johnson v. United States, 1948, 333 U. S. 10, 15, 68 S.Ct. 367, 92 L.Ed. 436; United States v. Coplon, 2 Cir., 185 F.2d 629, 28 A.L.R.2d 1041; Dorsey v. U. S., 5 Cir., 174 F.2d 899.

The Illinois Revised Statute, c. 38, sec. 657 (1951) is:

> "An arrest may be made by an officer or by a private person without warrant, for a criminal offense committed or attempted in his presence, and by an officer, when a criminal offense has in fact been committed, and he has reasonable ground for believing that the person to be arrested has committed it."

It is immediately apparent that an "officer" could have lawfully arrested defendant, under this statute, irrespective of a warrant, if he was aware of the return of the indictment, for he would have had "reasonable ground for believing that the person to be arrested" had committed a crime. In other words, the measure of validity of the arrest under Illinois law, insofar as official action is concerned, is, essentially, the same as that under the federal law. It is clear also that if not legally authorized to make an arrest, the arresting officers, as private persons, under the state statute, had no authority to arrest, for the Illinois statute empowers a private person to arrest only for "a criminal offense committed or attempted in his presence." This is more restrictive than the common law, which allowed a private person to arrest when a crime had actually been committed and he had reasonable ground for believing the individual arrested had committed it, Bishop's New Criminal Procedure, Secs. 165, 168, and distinguishes decisions in states where the common law rule is in effect, such as United States v. Lindenfield, 2 Cir., 142 F.2d 829 and U. S. v. Coplon, 2 Cir., 185 F.2d 629, 28 A.L.R.2d 1041. And, despite the fact that the Illinois statute is in derogation of the common law, it has been given its literal, restrictive meaning. Thus, in Enright v. Gibson, 219 Ill. 550, at page 554, 76 N.E. 689, at page 691, the Illinois Supreme Court, following a review of the common law and the statutory terms, concluded: " * * * an officer may also arrest where the criminal offense has in fact been committed and he has reasonable grounds for believing the person arrested has committed it. But this * * * power is not extended to a citizen by the statute." Therefore, in order that this arrest be valid under Illinois law it was necessary that the officers were entitled to arrest or, if not, that defendant either had committed or attempted a criminal offense in the presence of private parties making the arrest, i. e., the narcotic agents. We turn then to the federal authorities.

On June 14, 1930, Congress created the Bureau of Narcotics, 5 U.S.C.A. § 282, to carry out all statutory functions with regard to narcotics. By section 282b(b), the Secretary of the Treasury was authorized to confer or impose rights, privileges, powers and duties in respect to narcotic drugs upon the commissioner of narcotics and officers or employees of the Bureau of Narcotics. Section 2559, Title 26 empowered the Secretary of the Treasury to make all "needful" rules and regulations for carrying out provisions dealing with narcotics, and authorized regulations promulgated by the Commissioner of Narcotics and Commissioner of Internal Revenue. Lewis v. U. S., 9 Cir., 170 F.2d 43. By section 3170, Title 26, the Secretary was authorized to confer upon the Commissioner and any of his assistants, agents, or employees, and upon any other officer, employee, or agent of the Treasury Department, the rights, privileges, powers and duties, conferred upon the Secretary, or any officer or employee of the Treasury Department, by any law then or thereafter in force relating to the taxation, exportation, transportation, manufacture, possession, or use of, or traffic in, distilled spirits, wine, fermented liquors, or denatured alcohol. 53 Stat. 373, amended Mar. 17, 1941, c. 21, § 1, 55 Stat. 45, eff. Feb. 11, 1939.

The Secretary, in pursuance of this statutory authority, entered Regulation 206.3, C.F.R. 1946 Supplement, page 3030, which conferred upon the Commissioner of Narcotics all the functions of the Bureau and reaffirmed an earlier delegation of authority in revised form, defining such functions in paragraph (1) (e) IV of the revised regulation as follows: "There are hereby conferred and imposed upon the officers and employees of the Bureau of Narcotics, including the agents, inspectors, and other employees in the field service, all the rights, privileges, powers, and duties conferred or imposed upon the assistants, agents, and inspectors of the Commissioner of Internal Revenue. * * * All such officers and employees of the Bureau of Narcotics, including the agents, inspectors, and other employees of the field service, shall have, in the performance of their functions under the narcotic drug laws, all the rights, privileges and powers of internal revenue officers." Under reorganization plan 26 of 1950, 5 U.S.C.A. § 133z, the Secretary of the Treasury reacquired all delegated power

and authority, but, by order #120 dated July 31, 1950, he redelegated all functions, powers and privileges to the officials as they were just prior to the effective date of the reorganization plan.

█ Regulations such as the one referred to above, promulgated under specific statutory authority from Congress, are "legislative regulations" having the force of law upon promulgation, and so long as they are confined within limits of statutory delegation, their force will be recognized by courts. Seattle-First Nat. Bank v. U. S., D.C.Wash.1942, 44 F.Supp. 603, affirmed 9 Cir., 136 F.2d 676, affirmed 64 S.Ct. 713, 321 U.S. 583, 88 L.Ed. 944. It follows that under these various statutory provisions and regulations and others entered in pursuance thereof not necessary to be mentioned here, narcotic agents have all the authority of Internal Revenue officers.

Among the powers of such officers are the following: Under Title 26, section 3601(a)(1), they may enter, in the daytime or nighttime, any building or place where any articles or objects subject to tax are made, produced, or kept, so far as it may be necessary for the purpose of examining the same. Under Section 3654, Paragraph (c) "Every internal revenue agent shall see that all laws and regulations relating to the collection of internal revenue taxes are *faithfully executed and complied with, and shall aid in the prevention, detection, and punishment of any frauds in relation thereto.* (Italics supplied.) 53 Stat. 446." Under section 3720, Title 26, Paragraph (b), property may be seized. Under section 4003 "The agents whose employment is authorized * * * shall have all the powers of entry and examination conferred upon any officer of internal revenue by section 3601 and sections 2828, 2839, and 2857". Under section 2827, any such officer may enter into any distillery or building or place used for the business of distilling, or used in connection therewith, and whenever he is not admitted, he may break into the distillery to enable him to enter. Under sections 2828, 2830, 2839 internal revenue officers are granted further wide powers to enter, to seize and even to destroy certain property.

Section 3121(a) is as follows: "The Commissioner, his assistants, agents, and inspectors, and all other officers, employees, or agents of the United States, whose duty it is to enforce criminal laws, shall have all the rights, privileges, powers, and protection in the enforcement of the provisions of this part which are conferred by law for the enforcement of any laws in respect of the taxation, importation, exportation, transportation, manufacture, possession, or use of, or traffic in, intoxicating liquors." See also in this respect 26 C.F.R. 183.433; 190.484; 182.943. Section 182.957 of 26 C. F.R. is to the same effect.

Without quoting further, it appears that internal revenue officers have been given unique wide powers to see that all laws and regulations relating to revenue are "faithfully executed and complied with" and directed to "aid in the prevention, detection and punishment" of violations; that they have all the authority "conferred by law for the enforcement of any laws in respect to taxation, importation, exportation, transportation, * * * possession or use of, or traffic in intoxicating liquors", and powers of entry and seizure unknown to other governmental officers. They are enforcement officers charged directly with the power and duty to detect and prevent violations of the law and to bring about effective enforcement. These unprecedented broad powers, must, of necessity, we think, include the incidental power to arrest one found to be violating the law; to take into custody one whom they know to be violating the law which they are charged to enforce, and to prosecute violators. The obvious purpose of such unusually liberal powers, which Congress has seen fit to confer upon internal revenue officers, was to promote enforcement of the laws, to detect and prevent violations thereof and to further the prosecution of offenders. To this end, these powers, we think, must include the power to execute the law, to "put it in force" "to cause it to be executed" or "performed," to put it in "execution by force"; "to cause" the law "to take effect" "to compel obedience". See 14A Words & Phrases, Enforce, p. 182; 30 C.J.S. Enforce, p. 245; Tennant v. Kuhlemeier, 142 Iowa 241, 120

N.W. 689, 693. The authority conferred by the various statutes evinces, we think, a clear intent to include the arrest of offenders.

In construing any statute, anything within the clear intention of the legislative body enacting it is within the statute, though not within the strict letter of the law. People ex rel. v. Stratton, 335 Ill. 455, 167 N.E. 31; People v. Elgin Home Protective Ass'n, 359 Ill. 379, 194 N.E. 584. Statutes are to be construed as a whole. Village of Glencoe v. Hurford, 317 Ill. 203, 148 N.E. 69. The court must read the entire act and from the words used determine the legislative intent. Armour Grain Co. v. Pittsburgh, C., C. & St. L. R. Co., 320 Ill. 156, 150 N.E. 650. So, though the term arrest is not used in the statute, the language employed necessarily implies that such power was included.

Necessary implication refers to a logical necessity; it means that no other interpretation is permitted by the words of the Acts construed; and so has been defined as an implication which results from so strong a probability of intention that an intention contrary to that imputed cannot be supported. 42 C.J.S., page 405 and cases there cited. The term is used where the intention with regard to the subject matter may not be manifested by explicit and direct words, but is gathered by implication or necessary deduction from the circumstances and the general language. Burford v. Huesby, 35 Cal.App.2d 643, 96 P.2d 380; Goldfein v. Continental Ins. Co., 125 Neb. 112, 249 N.W. 78; 42 C.J.S., page 406. Consequently that which is implied in a statute is as much a part of it as that which is expressed, for a statutory grant of a power carries with it, by implication, everything necessary to carry out the power and make it effectual and complete. Thus, in determining the validity of official action, regard must be had to the authority conferred, which embraces every action which may properly constitute an aid to the enforcement of the law, Tinkoff v. Campbell, D.C. Ill., 86 F.Supp. 331, for, in addition to powers expressly conferred on him by law, an

officer has by implication such powers as are necessary for the due and efficient exercise of those expressly granted, or such as may be fairly implied therefrom. State ex rel. Taylor v. Superior Court, 2 Wash.2d 575, 98 P.2d 985. A general grant of power, unaccompanied by definite directions as to how the power is to be exercised, implies the right to employ means and methods necessary to comply with statutory requirements. We approve the language employed by Judge La Buy in Tinkoff v. Campbell, D.C., 86 F.Supp. 331, 332 quoted from Cooper v. O'Connor, 69 App.D.C. 100, 99 F. 2d 135, 139, 118 A.L.R. 1440: "It is not necessary—in order that acts may be done within the scope of official authority—that they should be prescribed by statute (U. S. v. Birdsall, 233 U.S. 223, 230-231, 34 S.Ct. 512, 58 L.Ed. 930 [934] ); or even that they should be specifically directed or requested by a superior officer. Mellon v. Brewer, 57 App.D.C. 126, 129, 18 F.2d 168, 171, 53 A.L. R. 1519, certiorari denied 275 U.S. 530, 48 S.Ct. 28, 72 L.Ed. 409. It is sufficient if they are done by an officer *in relation* to matters committed by law to his control or supervision.' (Italics supplied.) Standard Nut Margarine Co. v. Mellon, 63 App.D.C. 339, 341, 72 F.2d 557, 559, certiorari denied 293 U.S. 605, 55 S.Ct. 124, 79 L.Ed. 696; or that they have *more or less connection with* the general matters committed by law to his control or supervision.' (Italics supplied.) (Spalding v. Vilas, 161 U.S. 483, 498, 16 S. Ct. 631, 637, 40 L.Ed. 780; and see Lang v. Wood, 67 App.D.C. 287, 288, 92 F.2d 211, 212)".

We conclude that the motion to add additional matter, the colloquy, comes too late; that defendant, in the trial court, waived and abandoned the point now attempted to be raised; that, upon the merits, assuming for the purpose of this decision that the point is before us, the narcotic agents had statutory authority to make the arrest, and, incidentally thereto, to search and seize the articles found on the person of defendant and in his apartment. Accordingly the supplemental matter may be filed. The petition for rehearing is denied.